**UNITED STATES of America**

v.

**John Paul CHASE.**

No. 28613.

United States District Court
N. D. Illinois, E. D.

Oct. 17, 1955.

Robert Tiecken, U. S. Atty., Chicago, Ill., for the government.

Eugene T. Devitt, Chicago, Ill., for defendant.

SULLIVAN, District Judge.

The indictment in this cause No. 28613, charging Chase with the murder of F. B.I. Agent H. E. Hollis on November 27, 1934 at Barrington, Illinois, was filed on December 31, 1934; an indictment No. 28680, charging him with the murder of F.B.I. Agent S. P. Cowley at the same time and place, was filed on January 28, 1935. On February 19, 1935, a plea of not guilty was entered as to each indictment and trials reset for March 18, 1935. Defendant was tried and found guilty in case number 28680; he was sentenced by this Court in March, 1935, for the term of his natural life, and has since that time been confined to Alcatraz, except for the last year, which he has spent at Leavenworth. On April 27, 1955, petitioner filed a motion asking for a speedy trial on this indictment, or in the alternative for its dismissal. A hearing was held on the motion, and the matter was taken under advisement on briefs.

The motion is predicated on petitioner's Constitutional right to a speedy trial. In view of the fact that over twen-

ty years has elapsed since the indictment was returned, there is no doubt that he has not had such a trial; nor does the government contend that his incarceration has deprived him of the right to one. It is not disputed that Chase at no time before the filing of this motion asked the court for a trial; and it is the government's position that the right to a speedy trial is waived if no positive demand is made. Many cases are cited in support of this proposition, including Morland v. United States, 10 Cir., 1951, 193 F.2d 297; Shepherd v. United States, 8 Cir., 1947, 163 F.2d 974; Worthington v. United States, 7 Cir., 1924, 1 F.2d 154; Kyle v. United States, 9 Cir., 1954, 211 F.2d 912; Phillips v. United States, 8 Cir., 1912, 201 F. 259; Miller v. Overholser, 1953, 92 U.S.App.D.C. 110, 206 F.2d 415. These opinions state in general terms that unless demand is made for it, the right to a speedy trial is forfeited. Analysis of them, however, shows that each involved an action in avoidance or delay of trial more positive than mere silence or inaction. For example, in three of the cited cases (Morland, Shepherd, and Kyle), trial was necessarily delayed since defendant had fled the jurisdiction and had not been apprehended. In the Phillips case, defendant had several times asked for continuances; in Worthington, the court said he had "acquiesced" in the delay; in Fowler v. Hunter, 10 Cir., 1947, 164 F.2d 668, the defendant had filed various delaying motions. These cases, and others like them, are based on the logical thought that "Delays which have been caused by the accused himself can not, of course, be complained of by him." Shepherd v. United States supra, 163 F.2d at page 976.

The evidence produced at the hearing did not bring the instant situation within the spirit of these cases, since it failed to show that Chase took any action to avoid or delay trial. In fact, the evidence showed, if anything, only that Chase was aware of the existence of the indictment. Chase denies this, and his evidence tended to prove that his first knowledge of the situation was in 1954 when he came to Leavenworth. It is not necessary to make a finding of fact on this point; it may be assumed (without so finding) that Chase knew of the indictment. The government apparently seeks to equate mere knowledge with acquiescence; this equation is not drawn by the law, nor is it realistic in fact. This is particularly apparent when it is sought to apply it to one confined to jail.

Even assuming the general rule to be that a demand must be made for a speedy trial, an exception must be made in favor of one who is in fact powerless to take this action. In the case of Chase, he was confined for nineteen years to Alcatraz in the State of California. The practical difficulties which would have faced him in attempting, under the conditions there existing, to obtain a speedy trial in Chicago need not be detailed; they were sufficiently described at the hearing on the motion. For the first seven years of his incarceration, he was unable to talk to his fellow prisoners, under the "silence" system then in force at Alcatraz; his only communication was with his brother, in strictly censored conversations. To require him to demand a trial under these circumstances would be to ask the impossible. This the law will not do, particularly when the penalty is the loss of a valuable Constitutional right.

Of the cases cited above, only Kyle v. United States and Morland v. United States involved defendants confined to jail during the delay in trial. These opinions were not concerned with waiver, but held that the government was powerless to bring the defendants to trial, since the Attorney General and the state courts respectively refused to part with their custody. No such disability on the part of the government is shown or intimated here; it is not suggested that he could not have been brought to Chicago for trial at any time. In fact, there could have been no better time than immediately at the conclusion of the other trial. The two Special Agents died at the same time; and it appears from the

**232**

court records that all witnesses were subpoenaed for both trials.

The Kyle and Morland cases are not pertinent here, and authority must therefore be sought elsewhere. Arrowsmith v. State, 1915, 131 Tenn. 480, 175 S.W. 545, L.R.A.1915E, 363, involved a situation very similar to this one. The facts are indicated in the opinion:

"As we have seen, the orders entered on October 24, 1912, by which the several untried cases against Arrowsmith were 'retired from the docket until the expiration of said sentence,' were made in the absence and without the knowledge or consent of the accused, who was at the time an inmate of the state penitentiary, and without the knowledge or consent of his counsel. * * *

"The record discloses that no effort was made by the prosecution to put the accused on trial, though, confessedly, there was sufficient time and opportunity therefor. The fact that the defendant was then incarcerated was no legal excuse for the delay, as has been observed.

"*Arrowsmith was conditioned so that he could not personally demand that his own trial be proceeded with;* and without the knowledge of either himself or his counsel the court in legal effect, through the order, continued the cases for approximately two years—needlessly and vexatiously." 175 S.W. 547.

In Chase's case, also, the indictment was stricken from the docket without his knowledge, on motion of the government. The record shows that on April 2, 1936, on motion of the United States Attorney, the indictment was stricken with leave to reinstate; it was reinstated on March 9, 1937, and again stricken with leave to reinstate on May 4, 1942.

In Fulton v. State, 1929, 178 Ark. 841, 12 S.W.2d 777, 778, where the defendant had been confined to jail on another charge for two years, it was held that he had not waived his right to a speedy trial:

"* * * as it is stipulated that appellants have not been brought into open court and put upon trial, or given an opportunity to demand a trial, we hold that these men, *who have had no opportunity to demand a trial*, should not be regarded as having waived this valuable right." (Emphasis added.)

The right to a speedy trial is indeed a very precious one. It is a basic concept of our system of justice, articulated and made secure by the Sixth Amendment, that a fair and impartial trial is impossible after a long lapse of time. The effect of a delay in trial was described by Judge Laws in United States v. McWilliams, D.C.1946, 69 F. Supp. 812, 815:

"As in all long delayed cases, the witnesses now are scattered; some are not accessible, more particularly to the defendants who are without funds; the memories of witnesses as to events occurring many years ago are not clear. * * * *I do not see how these defendants now can possibly obtain fair trials.*" (Emphasis added.)

The two years' delay which so disturbed Judge Laws pales to insignificance when we consider the twenty years' delay with which Chase has been faced. Nor does the gravity of the offense with which he is charged change the situation. In Petition of Provoo, D.C.Md.1955, 17 F.R.D. 183, 196, a motion to dismiss was granted on the grounds that a speedy trial had been denied when the charge was treason resulting in the death of Captain Thomson in a Japanese prison camp. The court, in an opinion which cites and discusses many of the relevant cases, remarked:

"The offenses charged could not be more serious. But it would be a poor tribute to Captain Thomson to deny to this defendant the rights for which Captain Thomson gave his life."

This indictment charges the most serious offense known to our law. Its very

gravity demands that the defendant have all possible protection from the law. The thought of ordering him to trial on this charge after a lapse of twenty years. shocks the imagination and the conscience. While I have not been informed as to how many of the witnesses are available to either side, it can almost be judicially noticed that the passage of that length of time will have made some of them inaccessible. Even if two decades have left them alive and within the jurisdiction of this court, certainly their memories of those long past events are clouded. They could not be said after that length of time to be testifying to what they remember; they would be recalling something as in a dream, a kind of phantasmagoria, rather than an independent recollection. The human mind is so constructed that remembrance of even the sharpest experiences dulls with time. Witnesses, however honest, could not respond with any accuracy to cross-examination, and another important right would thus be lost to petitioner.

In summary, petitioner has not by mere knowledge (if he had it) waived his Constitutional right to a speedy trial. The stakes are too high to imply a waiver without some overt act on his part. This is particularly true when the charge is murder; to require a man to beg for a trial on such a charge, with its enormous penalty, requires too much of human nature. Conversely, to keep him in suspense as to his fate for twenty years approaches the inhumane. Further, a waiver will not be implied when the action required to avoid it is virtually impossible. While it is easy to say that a man confined to Alcatraz should take active steps in his own behalf, there are practical obstacles in his path which make this easier to say than to do. Accordingly, the requirment of demanding a speedy trial will not be made of one in this situation, and his failure to take action will not be construed as a waiver of his rights.

The motion to dismiss the indictment will be granted.

The attorney representing Chase on this occasion, Eugene T. Devitt, was appointed by the Court at the time this motion was filed. I wish to thank him for the time, skill, and conscientious research which he has devoted to the matter.