PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, HON. RAFAEL L. YDRACH YORDÁN, JUDGE, Respondent; MARÍA FIGUEROA, Intervener.

No. 2457. Submitted May 11, 1959.—Decided July 8, 1959.

446

*Hiram R. Cancio, Secretary of Justice (J. B. Fernández Badillo, former Secretary of Justice,* in the petition and memorandum), *Arturo Estrella, Assisting Secretary of Justice* and *William Fred Santiago, Acting Fiscal of the Supreme Court,* for petitioner. *Santos P. Amadeo* for respondent. *Luis A. Archilla Laugier* for intervener.

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

On June 27, 1958 two warrants of arrest were issued by judicial authority against María Figueroa for two violations of the Beverage Act (13 L.P.R.A. § § 1574 and 1754). These warrants were based on two affidavits subscribed by Leandro López Torres, Internal Revenue officer, in which he stated that on April 30 and May 16, 1958 he had bought cane rum from María Figueroa, without the containers having affixed thereon the internal revenue stamps, and that he had deposited the containers in the internal revenue office. On August 23, 1958 the district attorney accused Mrs. Figueroa of two violations of the Beverage Act. At the commencement of the trial on September 25, 1958, the defendant moved for the dismissal of the case on the ground that according to § 448 (1) of the Code of Criminal Procedure (34 L.P.R.A. § 1631) the information should have been filed within sixty

days after the internal revenue officer observed that the defendant possessed the clandestine beverage because from that instance she was liable to be arrested (34 L.P.R.A. § 243). The defendant maintained that the phrase "held to answer" of § 448 (1) necessarily referred to a situation when a person commits an offense in the presence of a peace officer authorized to perform an arrest. (Section 116 of the Code of Criminal Procedure, 34 L.P.R.A. § 243).

After a brief discussion in the court, the trial judge, immediately, and without requesting or receiving any written briefs, ordered the dismissal of the case in the following terms:

"The term of sixty days fixed by § 448 of the Code of Criminal Procedure cannot be extended and begins to run from the moment a person is subject to prosecution, that is, 'held to answer' as stated in the English version which is more accurate than the Spanish.

"The case of *Carmen Centrale* makes a distinction between arrest and 'held to answer' because in that case Carmen Centrale could not be physically arrested, in order to establish a pattern for all similar situations.

"The Court understands that when an offense is committed in the presence of a peace officer and as such officer he seizes objects pertaining to the crime, as in this case, and this officer does not arrest the person then but makes the arrest subsequently and files the information, from the time in which he obtains the objects, from the very moment in which he witnesses the crime and has before him all the elements of the crime, from that instance that individual is subject to prosecution, he is 'held to answer.' It would be different in other offenses where the links of the evidence, the ingredients of the crime, are disseminated, and proof thereof must be searched aliunde and on different dates. Then the situation differs.

"   .      .      .      .      .      .      .      .      .

"The Court understands that in these cases the peace officer from the moment he witnesses the commission of the crime and seizes the objects may immediately arrest the citizen who is from that moment the person held to answer, and take him to the authorities to have him prosecuted for the offense, or else file

the information within sixty days after such person was held to answer, to render effective his or her right to a speedy trial."

At the request of the Secretary of Justice we issued a writ of certiorari to review the above cited decision [1] and the case was finally submitted to this Court on May 11, 1959.

■■ We have no doubt whatsoever that the trial judge committed a serious error. His decision is contrary to the letter, history, and logic of the provision and to the unwavering opinion of this Court expressed in more than thirty judgments during more than half a century. His application of our decision in *People* v. *Carmen Centrale, Inc.*, 46 P.R.R. 478 (1934) is equally incorrect.

Section 448 provides: "The court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed in the following cases:

"1. Where a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter;

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within one-hundred and twenty days after the filing of the information."

This section finds its immediate precedent in § 1382 of the Penal Code of California, 50 West's Annotated California Code 779; 4 Kerr's Cyclopedic Codes of California 1273. Consequently, we turn, as we have done in the past, to the English version to obtain a clearer idea of the contents. The first paragraph pertinent to this case reads as follows: "Where a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter." The term, therefore, begins to run from the time the person is "held to answer for a public offense."

---

[1] As it was to be expected, said decision had very widespread effects. So far we have issued 58 orders to review the same number of decisions rendered in the same Part of the Superior Court. Press reports reveal that there are hundreds of cases in the courts of first instance in which the defendants have presented identical grounds.

An analysis of the language used in this section throws light on the meaning of the phrase "held to answer" and allows us to fix the two poles between which the term of sixty days shall run. The end pole is the date when the information is filed—*People* v. *Petrovich*, 36 P.R.R. 548, 549 (1927)—and the other must necessarily refer to a previous act. We also know that there must necessarily exist the act of a third party (a peace officer) with respect to the person: it is another who causes that "a person *has been held to answer*". Moreover, it is obvious that the defendant must be informed of the action of that third person who places him in the position to be "held to answer". No one can *answer* if he is completely ignorant of the act that compels him to *answer*. Finally, that act of the third person has to be such as will place the defendant in a position to be "held to answer *for a public offense*"; any other act that does not have such effect does not conform to the language of this paragraph. In brief, this exegesis shows that the starting point for the sixty-day term must be the act of the third person, prior to the filing of the information, known to the person concerned, and which must have the legal effect of compelling that person to answer for a public offense.

The history of these provisions proves that the foregoing analysis is correct. As we have already noted, our § 448 was taken from § 1382 of the Penal Code of California, exactly as it existed at the beginning of the century. What was the meaning of the phrase "held to answer" in that § 1382? The answer to this question requires us to make a survey, even if brief and referring only to essentials, of the criminal procedure of California.[2]

When a person was arrested he was taken before a magistrate who had the obligation to inform him of the complaint filed against him and of his right to be assisted by

---

[2] See specially § § 858–83 in Kerr's, *op. cit.*, p. 745–72 and 49 West's, *op. cit.*, p. 154–200.

counsel. After a reasonable period of time, and after complying with other requisites which we need not mention here, a preliminary hearing was held in which the material witnesses of both parties were examined. After hearing the evidence, the magistrate ordered the person to be discharged if it appeared that no public offense had been committed or that there was no probable cause to believe the defendant guilty. If after the inquiry he believed the defendant guilty, the magistrate made an order signed by him to the following effect: "It appearing to me that the offense in the within complaint mentioned has been committed, and that there is sufficient cause to believe the within-named AB guilty thereof, I order that he be held to answer for the same." Section 872. If the offense was not bailable, the magistrate ordered the commitment of the person. If he was admitted to bail, the bail bond was fixed and the person was committed until the bond was furnished. Later on the information was filed by the prosecuting attorney or by the grand jury (indictment) and finally brought to trial.

In that system the phrase "held to answer" of § 1382 had (and still has)[3] a precise meaning. It referred exclusively to the action of the magistrate to determine cause against the defendant and for that reason to order his commitment, with or without the right to post bond.[4] Therefore, there

---

[3] Even if this section has been modified in various ways—one of them being to reduce the time limit from thirty to fifteen days—the phrase "held to answer" maintains its original meaning. The history of this disposition is found in 50 West's *op. cit.*, p. 779. In 1931 a third paragraph was added to § 1382 requiring that in misdemeanor cases in an inferior court the trial should take place within thirty days after arrest. *Herrick* v. *Municipal Court*, 312 P.2d 264 (1957). In general see Fricke, *California Criminal Procedure* (1952) p. 65–82, 201–06.

[4] In *People* v. *Wallace*, 29 Pac. 950 (1892) confirmed in *People* v. *Thomas*, 203 P.2d 567, 568 (1949), the Supreme Court of California decided that an order "holding a defendant to answer" must be in writing and it is perfected when entered upon the docket of the justice who signs it. The Penal Code of California requires of each justice to keep a docket in which all the actions and proceedings in which he takes part must be entered.

was no difficulty in California for computing the term of thirty days within which the accusation was to be presented against the person "detained", pursuant to the provisions of § 1382.[5] If in the absence of a good cause the case was not brought to trial within the time limit, the case was dismissed. In misdemeanor cases the dismissal of the action was a bar to any other prosecution for the same offense, but it was not so in felony cases. (§ 1387.)

In 1902 we adopted the criminal procedure of California almost literally. There were, nevertheless, some omissions of importance, among which the elimination of the preliminary hearing before the magistrate is particularly noted. During this period two procedures were established: by means of the first (§ § 36–46 of the Code of Criminal Procedure, 34 L.P.R.A. § § 66–77) the arrested person is taken before a municipal judge or justice of the peace who "shall, upon an investigation as to whether the offense charged has been committed, and if the justice of the peace be satisfied that the offense has been committed and there exists probable cause that the defendant has committed the same, he shall remand the defendant to jail or admit him to bail, as the case may be, for his appearance before the district court to answer said charge. If there be no evidence that an offense has been committed or no probable cause showing the defendant's connection therewith, he shall be discharged." Section 45. In case no bail is admitted the judge must make out a commitment, signed by him specifying that "An order having been this day made by me that he be held to answer upon a charge of . . . you are commanded to receive him into your custody and detain him until he is legally discharged." Section 38. The following section which authorizes the judge to require a written undertaking of the witnesses to the effect that they will appear and testify before

---

[5] In the cases in which no bail was admitted, the prosecuting attorney had to file the information within a term of thirty days. Section 809. That term is now fifteen days. 49 West's, *op. cit.*, § 739.

the corresponding court, begins as follows: "On holding the defendant to answer, the justice of the peace. . ." And § 43 adds: "When a justice of the peace has discharged a defendant or has held him to answer he must return to the clerk of the court at which the defendant is required to appear, the warrant, the complaint, the depositions, if any, and all undertakings of bail, or for the appearance of witnesses, taken by him."

As may be noted, it could have been possible, irrespective of the differences between an "inquiry" and a "preliminary hearing," to assimilate this first procedure to that of California and to establish that the time limit of sixty days of our § 448 began to run from the moment the justice of the peace, after the "inquiry", determined the existence of probable cause against a person.[6]  Nevertheless, the ample powers granted to the prosecuting attorney which as a whole formed a second line of procedure, made it practically impossible to adopt that formula.  Sections 95 to 109 (34 L.P.R.A. §§ 171–84) authorized this public prosecutor to issue subpoenas for witnesses, to issue warrants of arrest, to make investigations, and to examine the witnesses.  In § 98 he was ordered to file the information after examining the witnesses and "if sufficient evidence is produced that the offense as charged or that an offense amounting to a felony has been committed, and that there exists probable cause as to the guilt of the defendant." [7]  Otherwise, and in compliance with the following section, the discharge of the defendant was recommended.  The prosecuting attorney could also fix bail. No mention is made whatsoever of the term "held to answer" in any of the sections that governed (and still govern) the

---

[6] If the sections above mentioned are compared with the corresponding sections of California, it will be observed that, except for the reference made to the preliminary hearing, they are practically identical.

[7] Section 70 orders the prosecuting attorney to file the information within twenty days after the commitment of the defendant by order of a judge.  See *Ex parte Colón*, 11 P.R.R. 411, 414 (1906) concerning the relation between this section and section 448.

powers of the prosecuting attorney. On the contrary, § 100 provided that: "If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the prosecuting attorney shall order the arrest of the defendant by issuing a warrant therefor."

How then could the first paragraph of § 448 be applied to a situation where different public officials, making use of different powers, could hold a person to answer for the commission of a public offense? Conceivably a great number of rules might have been established by courts by virtue of which the starting point in each case could have been made to depend on the kind and scope of the intervention of judges, prosecuting attorneys, and policemen. But that would have been a long and painful process full of administrative difficulties and of temptations to raise technicalities and commit irregularities. It was probably due to these reasons (although the reasons were never given explicitly) that ever since the very first time that the problem came up fifty five years ago—*People* v. *Quilichini, et al.*, 7 P.R.R. 126, 128–29 (1904)—this Court chose to establish a single rule which would govern the actions of all judicial and investigation officials. In cases of felonies as well as misdemeanors, in the case of a complaint or an information, regardless of whether it was a justice of the peace, a prosecuting attorney, or a policeman who initiated the proceedings, the period began to run at the time of the arrest or detention of a person for the commission of a public offense.[8]

With the sole exception of *People* v. *Carmen Centrale, Inc., supra,* in which a corporation and not a natural person

---

[8] In relation to the application of the rule to cases of second information or second arrest for the same offense see *People* v. *Barrios,* 23 P.R.R. 772 (1916); *People* v. *Díaz,* 32 P.R.R. 816 (1924); *People* v. *Dávila,* 37 P.R.R. 825 (1928); *People* v. *Soto,* 40 P.R.R. 390 (1930); *Ex parte Sánchez,* 45 P.R.R. 38 (1933); *People* v. *Mercado,* 46 P.R.R. 797 (1934); *People* v. *Echevarría,* 60 P.R.R. 666 (1942); *People* v. *Comas,* 75 P.R.R. 388 (1953); *People* v. *Maldonado,* 77 P.R.R. 603 (1954).

was affected and which will be discussed later, this Court; has followed this criterion in no less than thirty five cases,. or has taken for granted that it is the one that should be followed.[9] And in *People* v. *Albino*, 38 P.R.R. 193, 196 (1928) it was clearly stated:

"Section 448 cited embraces two cases of dismissal. The first, when a person has been held to answer for a public offense, if an information is not filed against him within sixty days thereafter. The second, if a defendant is not brought to trial within one hundred and twenty days after the filing of the information.

"Under the first of these provisions the time is counted not from the date of the commission of the act charged, but from the date of the arrest of the defendant. At the expiration of the sixty days the person under arrest, who knows well the date of his arrest, may move for dismissal. This depends on

---

[9] *People* v. *Quilichini et al.*, 7 P.R.R. 126, 128–29 (1904) ; *People* v. *Quilichini*, 7 P.R.R. 210, 213 (1904) ; *Ex parte Lizardi*, 7 P.R.R. 351, 353 (1904) ; *People* v. *Salinas*, 9 P.R.R. 335, 338 (1905) ; *The People* v. *Noble*, 9 P.R.R. 351, 353 (1905) ; *Ex parte Leroy*, 17 P.R.R. 1008, 1013, (1911) ; *People* v. *Ayala*, 19 P.R.R. 889, 891–92 (1913) ; *People* v. *Alsina et al.*, 22 P.R.R. 432, 435 (1915) ; *People* v. *Barrios*, 23 P.R.R. 772, 775 (1916) ; *People* v. *Fajardo*, 23 P.R.R. 823, 836–37 (1916) ; *People* v. *Carrasquillo*, 24 P.R.R. 781, 783–84 (1917) ; *People* v. *Bocanegra*, 27 P.R.R. 810, 811 (1919) ; *People* v. *Almodóvar*, 32 P.R.R. 764, 765 (1924) ; *People* v. *Díaz*, 32 P.R.R. 816, 817 (1924) ; *People* v. *Cruz*, 34 P.R.R. 206, 207–08 (1925) ; *Monserrate* v. *District Court*, 35 P.R.R. 337, 338 (1926) ; *People* v. *Petrovich*, 36 P.R.R. 548, 549 (1927) ; *People* v. *Dávila*, 37 P.R.R. 825, 826 (1928) ; *People* v. *Albino*, 38 P.R.R. 193, 196 (1928) ; *People* v. *Romero et al.*, 39 P.R.R. 504, 507 (1929) ; *People* v. *De la Rosa*, 40 P.R.R. 65, 66 (1929) ; *People* v. *Soto*, 40 P.R.R. 390, 392 (1930) ; *People* v. *Ramos,* 40 P.R.R. 771, 772 (1930) ; *Ex parte Sánchez*, 45 P.R.R. 38, 40 (1933) ; *Corbet* v. *District Court*, 46 P.R.R. 248, 250 (1934) ; *People* v. *Mercado,* 46 P.R.R. 797, 800 (1934) ; *People* v. *Álvarez*, 50 P.R.R. 100 (1936) ; *People* v. *Álvarez*, 57 P.R.R. 755, 756 (1940) ; *Medina* v. *Rodríguez*, 57, P.R.R. 960 (1940) ; *People* v. *Ruiz*, 58 P.R.R. 641, 643 (1941) ; *People* v. *Echevarría*, 60 P.R.R. 666, 667 (1942) ; *Ferrer* v. *District Court*, 60 P.R.R. 609, 610 (1942) ; *Ex parte Mercado*, 63 P.R.R. 877, 878–79 (1944) ; *People* v. *Comas*, 75 P.R.R. 388, 389 (1953) ; *People* v. *Maldonado*, 77 P.R.R. 603, 604–05 (1954).

him, but not on the date given in the complaint as that on which the acts were committed."[10]

In *People* v. *Carmen Centrale, Inc., supra,* an information was filed against said corporation for a violation of the Weights and Measures Act. At the commencement of the hearing the defendant filed a motion to dismiss the case based on an alleged violation of the first paragraph of § 448. Sections 453–60 of the Code of Criminal Procedure [11] set forth the proceedings to be followed against corporations. They provided briefly that upon a complaint filed against a corporation, the justice of the peace or a municipal judge must issue a summons by means of a presentation to one of the officers of the corporation "to appear before him at a specified time and place to answer the charge" and on the date set he must "proceed to investigate the charge in the same manner as in the case of a natural person, so far as these proceedings are applicable." After hearing the proof and in view of the testimony, the judge must "certify either that there is or is not sufficient cause to believe the corporation guilty of the offense charged, and must return the deposition and certificate." In view of this certificate "the prosecuting attorney must file an information thereon, as in the case of a natural person held to answer." Afterwards the proceedings against corporations were the same as in other cases. This procedure, applicable to corporations, had the consequence of limiting the powers of the prosecuting attorney and the judges had the authority to determine whether there was sufficient cause against a corporation.[12]

---

[10] In *People* v. *Bocanegra,* 27 P.R.R. 810, 811 (1919) we decided that the limitation period of 120 days provided in the second paragraph of § 448 does not begin to count from the date of the commission of the crime.

[11] Act No. 50 of May 7, 1937, (Sess. Laws, p. 165) repealed these sections. The procedure in force is contained in 34 L.P.R.A. § 1661.

[12] In *People* v. *Mayagüez Sugar Co., Inc.,* 37 P.R.R. 106, 107 (1927) it was decided that proof of the holding of a preliminary examination was a condition precedent to successfully file an information against a

In the case against *Carmen Centrale* the district judge received the certificate from the municipal judge on June 23, 1932 and the prosecuting attorney filed the information on the following October 11. This Court determined that a corporation, on being charged with a crime, had the same rights as a natural person, and, therefore, § 448 was applicable to corporations. It rejected the argument of the People which denied said application and which was based on the fact that the corporation was not subject to arrest and that the words "held to answer" referred exclusively to an arrest. The Court, speaking through Mr. Justice Wolf, said:

"The words 'held to appear or answer' have been construed in *Mitchel* v. *Boxholm Co-operative Creamery,* 128 Iowa 706, 105 N.W. 323, or rather the words are used by the legislature to require an appearance or an answer. The case shows that the words 'held to answer' do not necessarily mean an arrest. When a person, natural or artificial, is bound to answer a charge or be convicted, that person 'is held to answer'.

"     .          .          .          .          .          .          .          .

"In other words, we conclude that the commencement of a prosecution against a corporation is holding it to answer. The total idea of section 448 is that when a person is held to answer the information must be filed within sixty days, and we are of the opinion that this time begins to run when the certificate of the municipal judge is returned in accordance with section 457, *supra.*" (46 P.R.R. 478, 482 (1934).)

In the case of *Carmen Centrale* there is no indication that it is sufficient for a peace officer to witness the commission of crimes in order that the person committing the act be "held to answer" therefor. Even in the very special case of a corporation said decision holds that it is necessary *to commence a prosecution* and that the term begins to run "when the certificate of the municipal judge is returned in accord-

---

corporation. In *People* v. *West India Oil Co.,* 46 P.R.R. 120, 129 (1934) it was added that the corporation waived this procedure if the defect was not presented before the inferior court. In *Porrata* v. *Figueroa,* 41 P.R.R. 149, 151 (1930) we held that in that procedure the judges acted as committing magistrates.

ance with § 457." Indeed, what we did in *Carmen Centrale* was to adopt the general rule of California of "held to answer" in the specific situation of corporations, probably because in such cases our procedure specifically demanded that when determining the existence of probable cause, incumbent exclusively on the judge, the corporation must be summoned to appear to answer for the offense charged against it. Natural persons under our jurisdiction have never had this right.

The intervener in this proceeding relies mainly on the phrase *"propensa (sic) a ser convicta"* [13] used in the case of *Carmen Centrale*. In the first place we must comply with the well-known principle which binds us to determine the scope of the words used in a judicial opinion within the specific facts involved in that opinion. It is evident that those words, thus considered, do not support the thesis of the intervener. Even if they are examined independently of the context, the situation remains the same. For a person to be *"propensa a ser convicta"* (accepting for a moment that the phrase is correct) some kind of official action must necessarily have been taken against him for the alleged commission of a public crime. In other words, the procedural mechanism must in some way have been set in motion leading to a conviction.

Irrefutable proof that the general rule applicable to natural persons was not modified in *Carmen Centrale* can be found in at least the next ten opinions,[14] some of which were written by Mr. Justice Wolf, in which this Court computed

---

[13] In the English opinion rendered by Mr. Justice Wolf, he said: "When a person, natural or artificial, is bound to answer a charge or be convicted, that person is held to answer." 46 P.R.R. 482. The phrase *"propensa a ser convicta"* truly constitutes an error of translation. The *Diccionario de la Lengua Española* (1956) defines the word *"propensa"* as a "tendency to that which is natural to oneself" and *"propender"* means "to have a tendency towards something due to a particular affection, disposition or other motive."

[14] In footnote 9 see all the cases subsequent to *Carmen Centrale*.

the term of sixty days from the arrest or detention of the person involved. In none of them, exactly as before, correctness of this formula was questioned by any of the justices of this Court.

However, in 1952, an important change occurred in our criminal procedure. By virtue of the provisions of our constitution and statute, the prosecuting attorneys lost their power to issue warrants of arrest. (Const., art. II, § 10, 34 L.P.R.A. § 175). They were assigned exclusively to the judges to be used "only upon probable cause supported by oath or affirmation." However, a preliminary hearing as a prerequisite was not established and, as a result, the defendant does not have the opportunity to confront the evidence against him and to convince the trial judge that no crime has been committed, or that if it exists, he is not guilty thereof. In the majority of cases the defendant is not present when the judge determines that there is probable cause and then issues a warrant of arrest.

For this reason and also because the present formula is simple and precise, because it has fulfilled its purpose for more than half a century and there have been no legislative propositions for a change, we do not deem it advisable to make any alteration.

In the states of the Union it is absolutely required that the person be "held to answer" or committed by order of a magistrate so that the term fixed by law for filing the information be put into effect.[15] The American Law Institute, *Code of Criminal Procedure* (1930) pp. 311–16, 888–90; Annotation, *The Right to a Speedy Criminal Trial*, 57 Col. L. Rev. 846, 847–50 (1957). After an exhaustive research we have been unable to find a single constitutional or statutory provision or a single judicial interpretation requiring the limitation period to start before one of those

---

[15] This is also the law in England. Orfield, *Criminal Procedure from Arrest to Appeal* (1947) p. 351–52.

official actions has taken place. On the contrary, the accepted rule is that "in no event will the right to speedy trial arise before there is some charge or arrest, even though the prosecuting authorities had knowledge of the offense long before this." *The Right to a Speedy Criminal Trial, supra,* p. 848; Annotation, *Justice Overdue, Speedy Trial for the Potential Defendant,* 5 Stan. L. Rev. 95, 99–100 (1952) ; *People* v. *Jordan,* 290 P.2d 484, 491 (Cal. 1955) ; *People* v. *Hildebrandt,* 129 N.Y.S. 2d 48, 50 (1954) revoked for other reasons in 126 N.E. 2d 377 (C.A.N.Y., 1955) ; *cf. Taylor* v. *United States,* 238 F.2d 259, 262 (D.C. Cir. 1956). The Code of Criminal Procedure of the American Law Institute which undoubtedly sums up the best American experience recommends in § 292 that the time be computed when a person is "committed to custody."

The foregoing proves that the letter and history of the precept, the unanimous and consistent view of this Court, and the uniform experience of the states of the Union are in open contradiction with the interpretation proposed by the defendant. There are other cogent reasons which convince us that that interpretation must be overruled. It would tend, in situations similar to this one, to cause a regrettable confusion between the 60-day limitation period of § 448 and the statute of limitations for crimes established by other sections of the Code. 33 L.P.R.A. § § 231–34, *Taylor* v. *United States, supra* at 262. Even worse, it would place the trial judges and ultimately this Court in the very difficult position of having to act constantly as monitors of every complaint and information. We would have to investigate all the surrounding circumstances in order to reach a proper determination in each case. When did the authorities acquire knowledge of the commission of the offense? Who obtained that knowledge? At what moment did the information contain all the elements of the offense and who should make this decision? What would constitute just cause to excuse

the delay—administrative difficulties caused by accumulation of cases; mistakes made by the officer in the observation of the action or in the report to his superior due to unfitness, slackness or corruption; the need to postpone the detention or arrest so as not to impair a major investigation on clandestine activites such as the sale of beverages, narcotics and game of *"bolita"*, or on subversive acts? It is evident that the number of interrogations could be multiplied and that the trial courts would have to hold long hearings in numerous cases in order to know those facts and in this way the necessary discretion of public officials to investigate crimes would be drastically restricted.

On the other hand it should be observed that the advantage of the citizen would be, with only one exception, remote and speculative. The constitutional right to a speedy trial and the legislative concretions of it, like our afore-mentioned § 448, have three basic purposes: to avoid long imprisonment while the trial is pending; to eliminate personal anxiety, public suspicion and the economic and moral harm produced by a criminal accusation kept unsettled for a long period of time; to initiate the trial while the evidence is disposable, in other words, to avoid, due to the delay, the loss of witnesses and the dulling of their memory. *People* v. *Prosser*, 130 N.E. 2d 891 (N.Y. 1955); *Ex parte Trull*, 298 Pac. 775, 777 (Kan. 1931); *United States* v. *Henning*, 15 F.2d 760 (9th Cir., 1926). It is obvious that the first two propositions have no bearing on the circumstances of this case nor do they support intervener's motion. Nor should we presume that the fact that a peace officer fails to arrest a person while committing an offense in his presence necessarily damages defendant's defense.

It seems unnecessary to say that nothing in this opinion should be interpreted in the sense that we are trying to bar a judicial remedy for a really extraordinary situation in which it is proved that deliberately and inexcusably or as

a result of serious neglect, and after proof of all the elements. of the crime has been obtained, the arrest of a person or the filing of an information against him has been postponed. for the purpose of obstructing the defense, or of creating a climate of antagonistic public opinion against defendant, or of disturbing his peace by means of continuous persecution or ignominious investigation, all in violation of his right to a speedy, fair and just trial. Undoubtedly, such an extra-ordinary case in the judicial system of Puerto Rico, given the recognized probity of our officials, must require further analysis of our constitutional and statutory provisions.[16] *Cf. Segarra* v. *District Court*, 60 P.R.R. 455 (1942); *People* v. *Romero et al.*, 39 P.R.R. 504 (1929); *Dyer* v. *Rossy*, 23 P.R.R. 718 (1916); *People* v. *Balzac*, 56 P.R.R. 622, 625, (1940); *Gerardino* v. *People of Porto Rico*, 29 F.2d 517, 518 (1st Cir., 1928). The existence of that possibility, rather logical than practical, cannot, however, impel us to set aside a rule that has governed our proceed-ings for almost six decades and which has succeeded in keeping in this area the difficult but indispensable balance between the interest to protect public security and that of safeguarding individual liberty.

The order on review will be set aside and the case remanded for further proceedings compatible with this. opinion.

---

[16] In the afore-cited Annotation, *Justice Overdue, Speedy Trial for the Potential Defendant*, the following remedies are suggested: (1) the doctrine of laches already applied in England for these purposes; (2) the writ of mandamus; (3) the constitutional guarantee of due process of law. In addition, other statutory remedies are suggested to solve the problem. See also *Fouts* v. *United States*, 253 F.2d 215, 217 (6th Cir., 1958); *State* v. *Milner*, 149 N.E.2d 189 (Ohio 1958); *Taylor* v. *United States, supra; Harris* v. *Municipal Court*, 285 Pac. 699 (Cal. 1930); *United States* v. *Chase*, 135 F.Supp. 230 (N.D. Ill. 1955); *Ex parte State*, 52 So.2d 158 (Ala. 1951) as examples of really extraordinary situations in which it was sought to prosecute the defendants many years after the crime had been committed and the information filed against. them. It is to such extraordinary situations as those illustrated in these cases to which we refer in the text.