[Crim. No. 20645. Second Dist., Div. Five. Aug. 28, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY JEROME MacDONALD et al., Defendants and Appellants.

## COUNSEL

Richard E. Eldred and J. Michael Flanagan, under appointments by the Court of Appeal, Steinhart & Fitzgerald and Terry Steinhart for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Lawrence P. Scherb II, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THE COURT.-** ▆ Defendants MacDonald, Tender, and Williams filed demurrers to a multicount indictment and motions to dismiss the indictment upon the theory that their constitutional rights to a speedy trial (U.S. Const., Amend. VI; *Klopfer* v. *North Carolina* (1967) 386 U.S. 213 [18 . L.Ed.2d 1, 87 S.Ct. 988]) were violated by the failure of the California authorities to press immediately for their extradition and trial in California upon their being apprised that defendants were serving sentences in the Maryland penitentiary for convictions of felonies[1] committed in Maryland. A pretrial evidentiary hearing was held in the superior court, following which that court made formal findings of fact accompanied by a minute order which overruled the demurrers and denied the motions to dismiss. Thereafter, defendants entered their respective pleas of guilty to count X of the indictment which charged them with having committed a robbery (Pen. Code, § 211) in Los Angeles County on March 15, 1965.[2] Sentences

---

[1]The joint opening brief filed by defendants MacDonald and Williams states defendants were apprehended "on similar charges [to those involved in this instant case] originating in . . . Maryland."

[2]The count also contained an allegation that they were armed with a deadly weapon at the time of the commission of the offense, but no disposition was made as to this allegation. The other counts of the indictment were dismissed upon the People's motion in the interests of justice.

to state prison to run concurrent with those of Maryland were imposed and defendants returned to Maryland State Prison. They appeal from their respective judgments of conviction (Pen. Code, §§ 1237, subd. 1, and 1237.5) seeking a review of the order overruling the demurrers and denying their motions to dismiss.

The facts are as stated by Justice Stephens in his dissenting opinion. We add, however, that although the trial court made formal findings of fact they were not accompanied by conclusions of law except as set forth in a minute order (dated August 7, 1970) allowing certain amendments to its findings and reading in part as follows: "The amendments are made by interlineation by the Court. Objections to findings as amended are overruled. Demurrer and motion to dismiss are argued. Demurrer overruled. Motion to dismiss denied. The Court finds no denial of a speedy trial on the part of the prosecution. *The Court makes no finding as to prejudice.*" (Italics added.)

Pending defendants' appeals in this court, the United States Supreme Court decided the case of *Barker* v. *Wingo,* 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182] on June 22, 1972. At the very threshold of its opinion the court stated that no previous case in that court had "attempted to set out the criteria by which the speedy trial right is to be judged. . . . This case compels us to make such an attempt." (407 U.S. 514, 516 [33 L.Ed.2d 101, 109, 92 S.Ct. 2182, 2185].) Without going into all of the ramified considerations to be found in the opinion, suffice it for our purposes to state here that the court enumerated four principal factors to be considered: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (407 U.S. 514, 530 [33 L.Ed.2d 101, 117, 92 S.Ct. 2182, 2192].) Of the various types of prejudice, the court stated, "Of these, the most serious is the last [impairment of defense], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (407 U.S. 514, 532 [33 L.Ed.2d 101, 118, 92 S.Ct. 2182, 2193].) On this issue, the trial court's minute order stated, "The Court makes no finding as to prejudice." From the context, it would appear to have reference to prejudice which concerns impairment in the ability of the defendants to adequately defend themselves of the charges.

*Barker* does not deal with the situation where the defendant is undergoing penal servitude in a foreign jurisdiction. The latest United States Supreme Court case dealing with this interstate situation is *Smith* v. *Hooey* (1969) 393 U.S. 374 [21 L.Ed.2d 607, 89 S.Ct. 575] where the Texas authorities refused to bring the defendant, then incarcerated in the federal penitentiary in Kansas, to trial despite repeated demands by him over a

six-year period. Nevertheless, the factor of demand by the defendant which is an essential factor in *Smith* and in statutes like our Penal Code section 1389 now should be read in the light of *Barker,* which sets forth the guidelines for properly weighting this factor in determining the speedy trial issue. Should the corollary issue of right to counsel in connection with Penal Code section 1389 proceedings be raised in the new hearing, the trial court should consider the case of *Kirby* v. *Illinois* (June 7, 1972) 406 U.S. 682, 688 [32 L.Ed.2d 411, 417, 92 S.Ct. 1877, 1882] also decided after the previous hearing.

We cannot fault the trial court in this case for what it did without the criteria by which the issue is to be decided, which were not pronounced until the rendition of *Barker.* (Cf. *In re Tahl* (1969) 1 Cal.3d 122, 133-135 [81 Cal.Rptr. 577, 460 P.2d 449], cert. den. 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708]; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 23 [76 Cal.Rptr. 809, 453 P.2d 353].) Nevertheless, *Barker* is certainly applicable to this case which was pending appeal when *Barker* was handed down. The findings of the trial court in the instant case are incomplete in the light of the *Barker* criteria.

We, therefore, remand the cause to the superior court with directions to hold a new post-judgment evidentiary hearing limited to the speedy trial issue in the light of *Barker.* (*People* v. *Berutko* (1969) 71 Cal.2d 84, 89-90 [77 Cal.Rptr. 217, 453 P.2d 721]; Pen. Code, § 1260.) Should the trial court conclude that defendants' Sixth Amendment rights to a speedy trial were violated, then it should further order the judgments and guilty pleas vacated and dismiss count X. Should the trial court find to the contrary, namely, that the speedy trial right was not violated, such finding should be accompanied by a further order that the judgments of conviction are to stand and that vacation of the judgments is denied so that defendants may seek a review of the ruling made upon the new post-judgment evidentiary hearing (Pen. Code, § 1237, subd. 2). We do not foreclose the power of the district attorney to forego such a new hearing and to consent to a vacation of the judgments and guilty pleas and dismissal of count X if in the exercise of his discretion the interests of the People would be best promoted by such a course of action.[3] This observation is made merely to clarify that this possibility is not foreclosed and it is not intended to suggest that this alternative should be selected.

The judgments of conviction appealed from by defendants MacDonald,

---

[3] In addition to the cost of bringing defendants before the California court, the trial court in the prior hearing ordered the payment of round trip air transportation expenses of two witnesses from Washington, D.C. and Baltimore.

. Tender, and Williams are ordered to stand, but the causes are remanded to the superior court for further proceedings consistent with the views set forth in the foregoing opinion.[4]

**STEPHENS, J.,** Dissenting.—Defendants appeal from judgments of convictions entered pursuant to their pleas of guilty to having committed a robbery (Pen. Code, § 211) on March 15, 1965 in Glendale, California.

During the period from December 6, 1964 to March 15, 1965, certain robberies, burglaries, and kidnapings took place in the cities of Redondo Beach, Alhambra, and Glendale, California. Sometime on or before September 2, 1965, the authorities in Glendale came to suspect that defendants might have been the perpetrators of these crimes, and caused a complaint to be filed.[1]

On September 3, 1965, the authorities in Glendale were made aware that defendants were then in the custody of the State of Maryland, and on that same date, the Glendale authorities caused felony warrants to be forwarded to Maryland State Penitentiary as detainers against defendants. On March 9, 1966, defendants MacDonald and Williams were made aware and given copies of the *detainers* against them, and sometime after November 29, 1966, defendant Tender was made aware and given a copy of the *detainer* against him.

California authorities then took no further action against defendants until February 18, 1970, when a felony complaint was filed in Los Angeles County charging defendants with the crimes that had been committed in Redondo Beach and Glendale. Then, pursuant to a request by the Los Angeles County District Attorney, defendants were brought to California, and on April 14, 1970,[2] a preliminary hearing was held on the complaint,

---

[4]The remand directing a new post-judgment hearing, in lieu of vacating the judgment with directions, is admittedly new, but we believe it to be authorized by the last sentence of Penal Code section 1260. It has the merit of not disturbing the records as to the judgments of conviction unless legal reason for doing so is established, thus reducing the need for correction of records by law enforcement authorities. It also avoids the ambiguities of Penal Code section 2900.5, subdivision (b), and assures defendants that they will receive credit for concurrent time on the judgments in the event the judgments are not set aside.

[1]On our own motion, we had the record on appeal augmented by inclusion of the superior court files and the exhibits. Although the Glendale complaint is not included in the record, the existence of the complaint is evidenced by the following language of the arrest warrants that were issued in the Glendale Judicial District on September 2, 1965: "Complaint on oath having this day been laid before me that the [following crimes have] been committed, and accusing [defendants] thereof, you are therefore commanded to arrest the above-named [defendants] and bring them before me . . . ."

[2]A delay of almost five years.

and all defendants were held to answer for the crimes that had been committed in Glendale; defendants Tender and Williams were held to answer for the crimes that had been committed in Redondo Beach. On April 28, 1970, an information was filed, and at the arraignment, defendants pleaded not guilty, their demurrer was overruled, and their motion to dismiss was denied.

Thereafter, on May 22, 1970, the Los Angeles County Grand Jury returned an 11-count indictment charging all defendants with the crimes that had been committed in Glendale, and charging defendants Tender and Williams with the crimes that had been committed in Redondo Beach and Alhambra. At their arraignment on the indictment, defendants pleaded not guilty, demurred, and moved to dismiss on the ground, among others, that their right to a speedy trial had been denied. After argument, defendants' demurrer was overruled, their motion to dismiss was denied, and findings of fact were entered. Each defendant thereafter withdrew his plea of not guilty to count X of the indictment (the March 15, 1965 Glendale robbery) and pleaded guilty to that count. Pursuant to the guilty pleas, each defendant was adjudged guilty of second degree robbery and was sentenced to the term prescribed by law, which term was "to run concurrently with any other term in any other state." The remaining counts were dismissed in the interest of justice, and defendants were ordered "returned to Maryland State Prison forthwith."

### The Appeal

Defendants contend that they were denied their right to a speedy trial. I agree.

The Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial. . . ." Under the rule of *Jones* v. *Superior Court*, 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], defendants became " 'accused' at the time the complaint was filed" (*id.,* at p. 739), which was sometime before September 3, 1965. The People contend, though, that defendants' failure to demand trial constituted a waiver of the speedy trial right. However, since the time of the filing of the People's brief, the United States Supreme Court has "reject[ed] . . . the rule that a defendant who fails to demand a speedy trial forever waives his right. [Fn. omitted.]" (*Barker* v. *Wingo* (1972) 407 U.S. 514, 528 [33 L.Ed.2d 101, 115, 92 S.Ct. 2182, 2191].) I therefore conclude that defendants' right to a speedy trial attached sometime before September 3, 1965, and that defendants' failure to formally demand trial did not constitute a waiver of their right to a speedy trial.

Next to consider is the question of whether defendants' speedy-trial right as defined in *Barker* v. *Wingo, supra,* was violated. "The approach . . . is a balancing test, in which the conduct of both the prosecution and the defendant are [*sic*] weighed. [Fn. omitted.] . . . . [S]ome of the factors which courts should assess in determining whether a particular defendant has been deprived of his right [are]: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. [Fn. omitted.]" (*Barker* v. *Wingo, supra,* 407 U.S. at p. 530 [33 L.Ed.2d at pp. 116-117, 92 S.Ct. at pp. 2191-2192].)

In regard to the length of the delay, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance." (*Id.,* at p. 530 [33 L.Ed.2d at p. 117, 93 S.Ct. at p. 2192].) In the case before us, there is no question but what the delay of almost five years was presumptively prejudicial. (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734: prejudice found in a delay of 19 months.)

The People's reason for their delay was, in brief, that they had no duty to bear the burden and expense of bringing defendants to trial in the absence of a demand for a trial by defendants.[3] The People's reliance, however, upon the expense of bringing defendants to trial is unpersuasive (cf., *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]; *Smith* v. *Hooey,* 393 U.S. 374 [21 L.Ed.2d 607, 89 S.Ct. 575]), and the People's position that a defendant must demand the right to speedy trial is without merit. (*Barker* v. *Wingo, supra.*)

In regard to defendants' failure to formally demand their right to a speedy trial, the court in *Barker* v. *Wingo, supra,* "emphasize[d] that failure to assert the right will make it difficult . . . to prove that he was denied a speedy trial." (*Id.,* at p. 532 [33 L.Ed.2d at pp. 117-118, 93 S.Ct. at p. 2193].) There are, however, three fundamental differences between the defendant in *Barker* and defendants in the case before us. First, the defendant in *Barker* was in custody only ten months of the "well over five years" before his trial, while defendants here were in custody during the entire near-five-year delay. "While it is easy to say that a man confined in Alcatraz should take active steps in his own behalf, there are practical obstacles in his path which make this easier to say than to do."[4]

---

[3]Of course, this is nonsense since the trial costs were to be borne by the People *whenever* defendants were brought to trial, whether promptly or belatedly.

[4]Here, the trial court found that "defendant David Ray Williams was divorced in 1967 and is unaware of the present address of his wife nor of any friends he knew in 1965 while he was in Southern California, nor has he corresponded with such friends since he was incarcerated in the State of Maryland." (Finding #16.)

(*United States* v. *Chase,* 135 F.Supp. 230, 233.) Second, in *Barker,* defendant's counsel admitted that defendant did not want a speedy trial because he "undoubtedly thought that if [his confederate, who was then being tried] were acquitted, he would never be tried." (*Id.,* at p. 535 [33 L.Ed.2d at p. 119, 93 S.Ct. at p. 2194].) Defendants here had no such motive. Third, while the defendant in *Barker* was actively seeking to avoid trial, the only evidence before us that defendants were even aware of the existence of the California charges is that defendants were advised and given copies of the detainers. Certainly, defendants could not be expected to "demand" trial unless they were "aware" that they were to eventually face trial, and in *People* v. *Kirkpatrick,* 7 Cal.3d 480, 484 [102 Cal.Rptr. 744, 498 P.2d 992], the California Supreme Court held that the defendant's possession of a document that set forth the defendant's constitutional rights did not impute to the defendant the constitutional level of "awareness" of those rights that is required for a guilty plea. In light of *Kirkpatrick,* and in light of the fact that the trial court expressly found that defendants *were not advised of their rights to counsel, or speedy trial, or that their silence would constitute a waiver of their right to a speedy trial,*[5] I believe that the People may not rely solely upon defendants' possession of copies of the detainers to establish that defendants were so "aware" of the California charges.[6]

---

[5]As to each defendant here, the trial court expressly found as follows: "The defendant . . . was not advised by any authority in the State of Maryland that in reference to the detainers placed against his release he had (1) a right to counsel to advise him as to what action should be taken with reference to the detainers or the manner of obtaining a dismissal of such detainers; (2) that he had a right to a speedy trial (except that the defendant was advised that he would receive a trial within 180 days of the filing by him of a request for final disposition); (3) that a failure to file a request for a final disposition would constitute a waiver of his right to a speedy trial." (Finding #13 with respect to defendant MacDonald; finding #13 with respect to defendant Tender; and finding #14 with respect to defendant Williams.)

[6]At least defendant Tender may not have appreciated the potential effect of the detainer against him until approximately February 7, 1970. The following declaration was admitted into evidence on July 7, 1970:

"I, Elisabeth W. Jenkins, am a graduate student at the University of Maryland. To complete requirements for a Master's Degree in Human Development Education, I did a study of personality integration, using as my subject Angelo Tender, then an inmate at the Maryland Penitentiary. I saw Angelo roughly once a week, for one to two hours each session, from December 24, 1969, until April 1, 1970, just prior to his removal by California authorities.

"Judging by his behavior and the things he talked about, it is my opinion that he was unaware that California intended to prosecute him on the charges for which he is currently on trial until very shortly before, or on, February 7, 1970. When I visited Angelo on that date he was extremely upset and spoke rapidly and somewhat incoherently about some detainers California had against him and what might be done to have them dropped. I did not understand all he said about them, because I

Defendants were unquestionably prejudiced by the delay. As to each defendant, the trial court expressly found: "The program of rehabilitation of the defendant . . . instituted by the Maryland State Penitentiary *has been interfered with* by the fact that Los Angeles County has obtained temporary custody of the defendant, and that *the existence of a detainer since 1965 had an effect on the custody and the type of rehabilitative program available for the defendant."[7]* (Findings No. 14; italics added.) Further, during the almost-five-year-delay interval, defendants were deprived of the opportunity to serve their California sentences concurrently with the Maryland sentences, and "[t]he most obvious prejudicial effect of the long . . . delay was to seriously impair [defendants'] ability to recall and to secure evidence of [their] activities at the time of the events in question" (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 740).[8] In addition, the true intent of the law enforcement authority is revealed in the following statement, which we quote from a letter written by an Alhambra police authority to police authorities in Maryland, dated October 11, 1965: "We realize that there is a possibility that many years will pass (we hope) until the State of California is able to extradite Mr. Tender and Mr. Williams."

In discussing its balancing test, the court in *Barker* v. *Wingo, supra* (407 U.S. at p. 533 [33 L.Ed.2d at p. 118, 93 S.Ct. at p. 2193]), commented as follows: "We regard none of the four factors [length of delay, reason for delay, defendant's assertion of his right, and prejudice of defendant] . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant," and (*id.,* at p. 530 [33 L.Ed.2d at p. 116, 93 S.Ct. at p. 2192]): "A balancing test necessarily compels courts to approach speedy-trial cases

lacked background information and legal knowledge to make his words meaningful, but I knew Angelo well enough to know he was more upset and excited than I had ever seen him and was obviously in real distress."

[7]For discussions on the hardships that detainers can work upon institutionalized persons, see Hall, Modern Criminal Procedure, at page 921; *The Convict's Right to a Speedy Trial,* 61 Journal of Criminal Law, Criminology and Police Science 353; see also, *Dickey* v. *Florida,* 398 U.S. 30, 49-50 [26 L.Ed.2d 26, 38-39, 90 S.Ct. 1564] and *Hayes* v. *Superior Court,* 6 Cal.3d 216, 221-222 [98 Cal.Rptr. 449, 490 P.2d 1137].

[8]When the trial court stated, "The Court finds no denial of a speedy trial on the part of the prosecution," it obviously based its conclusion upon the then existent law that a defendant's demand was essential. (*People* v. *Wilson,* 60 Cal.2d 139, 148 [32 Cal.Rptr. 44, 383 P.2d 452].)

When the court stated, "The Court makes no finding as to prejudice," it merely refused to make a finding either way on the issue. In the light of the fact-findings which *were* made, no conclusion of law on the issue of prejudice would be justified under *Barker* except that defendants were prejudiced by the delay.

on an *ad hoc* basis." In applying this test, it is proper to first consider defendants' side of the balance: Defendants suffered a presumptively prejudicial near-five-year delay; defendants suffered substantial prejudice as the consequences of the passage of time and the hardships of the detainer system; and defendants' failure to demand a speedy trial is mitigated by the inherent difficulties that attend any attempt to assert a constitutional right while incarcerated in a state prison. On the People's side of the balance, the People failed for a period of almost five years to either request defendants' temporary custody pursuant to the Interstate Agreement on Detainers (Pen. Code, §§ 1389-1389.7; Anno. Code of Maryland, art. 27, §§ 616A-616S), or to initiate extradition proceedings pursuant to the Uniform Extradiction Act (Pen. Code, §§ 1548-1558; Anno. Code of Maryland, art. 41, §§ 16-59A).) On balance, the People's reliance upon (1) the fact that such procedures were burdensome (i.e., expensive), and (2) the fact that defendants did not demand the right to a speedy trial, was not a justifiable excuse for their delay.

In response to the majority opinion, I see no rhyme nor reason to further burden an already overtaxed trial court. Any further consideration of this matter by that court should certainly include an updated hearing on the issue of prejudice; this would involve further expense to the People in bringing defendants back again to California. Also entailed may well be a further tilting with windmills and needless duplication of effort in renewed appellate consideration of any new order.[9] I recognize that the People may choose not to continue this prosecution, but I cannot subscribe to the present determination which to my mind fails to reach the real issue and merely extends the time when judicial fairness must recognize that the right to a speedy trial was denied these defendants.

I would reverse the judgments and direct that the superior court order dismissals of the instant charges.

---

[9]In remanding this case to the trial court, the majority opinion (p. 511) states: "Should the trial court find . . . that the speedy trial right was not violated, such finding should be accompanied by a further order that the judgments of conviction are to stand and that vacation of the judgments are denied so that defendants may seek a review of the ruling made upon the new post-judgment evidentiary hearing."