Filed 3/25/13  P. v. Boothe CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AMBER ELAINE BOOTHE,<br><br>    Defendant and Appellant. | F063841<br><br>(Super. Ct. No. CRF35232)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Eleanor Provost, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found Amber Boothe guilty of committing various financial crimes against her grandmother.  Boothe now challenges the trial court's denial of a motion to continue her sentencing hearing.  She contends the court violated her constitutional rights by

refusing to allow her additional time to search for a new attorney in hopes of preparing and filing a motion for new trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2011, the Tuolumne County District Attorney filed an amended criminal information charging Amber Boothe with one count of theft from an elder or dependent adult by a caretaker (Pen. Code § 368, subd. (e);[1] Count 1), one count of identity theft (§ 530.5, subd. (a); Count 2), twelve counts of second degree commercial burglary (§ 459; Counts 3-14), and one count of forgery (§ 470, subd. (d); Count 15). These crimes were alleged to have occurred over the course of nine months, beginning in July 2010 and ending in April 2011. The victim was Boothe's 88-year-old grandmother, Ollie Pauline Donaldson.

Boothe was represented at all stages of the case by a deputy public defender. The jury trial commenced on September 28, 2011 and ended on October 6, 2011. Twelve witnesses testified, including the victim. Boothe took the witness stand in her own defense.

Ollie Donaldson had spent years living in and around San Joaquin County with, or in close proximity to, a granddaughter named Cathy Bedford. During those years, Cathy Bedford helped Ms. Donaldson manage her finances. In approximately June 2010, Ms. Donaldson moved to an assisted living facility in Tuolumne County to be closer to her son, David Boothe. David Boothe briefly took over managing Ms. Donaldson's finances before delegating the responsibility to his daughter, Amber Boothe.[2]

By July 2010, Amber Boothe had substantial control over Ollie Donaldson's bank accounts and credit card. Ms. Donaldson was living on a fixed monthly income of approximately $1,132. Boothe was responsible for ensuring $961 of that income was

---

[1] Undesignated statutory references are to the Penal Code.

[2] All subsequent references to Boothe are to appellant.

2.

paid to Ms. Donaldson's assisted living facility every month to cover her rent, utilities, and meals.

The prosecution's evidence showed that in the summer of 2010 Ollie Donaldson had savings of $1,417 and an outstanding credit card balance of $341.55. By February 2011, Ms. Donaldson had no money in her savings account and her credit card debt had ballooned to $6,470. Meanwhile, numerous overdraft charges were assessed against Ms. Donaldson's checking account and the assisted living facility complained that her monthly rent was not being paid.

Although Boothe attributed some of the spending to her grandmother, she admitted to taking thousands of dollars from Ollie Donaldson for her own personal needs. Boothe used the money to pay for groceries, car insurance, telephone service, utility bills and miscellaneous items. This included payments of approximately $1,300 to Pacific Gas and Electric Company and $1,275 to DISH Network for satellite television service. Boothe claimed that all of her activities were authorized by Ms. Donaldson, who had allegedly agreed to help her during an extended period of financial difficulty. When Ms. Donaldson took the stand, she denied Boothe had ever asked for financial assistance and testified that the behavior in question occurred without her knowledge or permission.

The jury returned its verdict on October 6, 2011. Boothe was acquitted of second degree commercial burglary as alleged in Counts 4, 11 and 13, and found guilty on all remaining charges.[3] Sentencing was scheduled to take place 34 days later on November 9, 2011.

When the matter was called at the November 9, 2011 hearing, Boothe's counsel told the court: "I'm going to be asking for a continuance on that." When asked why, counsel responded: "She is in the process of trying to hire an attorney for a motion for

---

[3] The prosecution dismissed the second degree commercial burglary charges under Count 3 and Count 12 during trial.

3.

new trial….[W]e are doing further investigation on some of the testimony that [if] it hits pay dirt will be relevant to impeachment of some of the testimony. I want to be – I'm purposely being vague on that, but there are some things we're looking into."

The public defender offered no additional information regarding Boothe's desire for new counsel. The prosecutor stated that the People "would vigorously oppose any continuance." It was noted that the victim's other granddaughter, Cathy Bedford, had driven several hours to attend the sentencing hearing and was prepared to make a statement to the court.

The court advised defense counsel: "[Y]ou're going to have to tell me something more specific about why you think a motion for new trial could possibly succeed. This was a lengthy trial. It had a whole lot of testimony. As I understand it from the probation report, the victim is now dead so…doing a new trial now is pretty unlikely, unless you've got something pretty darned good. So, I would like to know what you got."

Defense counsel explained that the victim died of stomach cancer shortly after the trial was over, but Boothe was not previously aware that Ms. Donaldson was afflicted with the disease. Boothe suspected Cathy Bedford had advance knowledge of the cancer diagnosis, yet gave misleading testimony during trial regarding how Boothe's actions negatively impacted Ollie Donaldson's physical and mental health.

Boothe also believed that certain photographs which had been admitted into evidence were misleading to the jury. The pictures depicted Ms. Donaldson's apartment at the assisted living facility, but were apparently taken while she was in the process of moving out. Therefore, according to defense counsel, the photographs did not accurately reflect the number of household items that Ms. Donaldson owned at the time.

The prosecutor renewed his objections and challenged the relevance of Boothe's accusations. The court denied the request for a continuance and proceeded with

sentencing as scheduled. Boothe was sentenced to five years of probation and was ordered to serve one year in the county jail.

## DISCUSSION

### The Request for a Continuance Was Untimely

Section 1050 governs continuances in criminal cases. The statute provides that in order to continue any hearing in a criminal proceeding, "a written notice shall be filed and served on all parties to the proceeding *at least two court days before the hearing sought to be continued*, together with affidavits or declarations detailing specific facts showing that a continuance is necessary…." (§ 1050, subd. (b), italics added.) "When a party makes a motion for a continuance without complying with the requirements of subdivision (b), the court shall hold a hearing on whether there is good cause for the failure to comply with those requirements. At the conclusion of the hearing, the court shall make a finding whether good cause has been shown…. If the moving party is unable to show good cause for the failure to give notice, the motion for continuance shall not be granted." (§ 1050, subd. (d).)

Boothe contends that she made a "timely request for a continuance to retain new counsel to investigate a motion for a new trial." Her contention is not supported by the record. The public defender made an oral request for a continuance at the start of the sentencing hearing without providing advance notice to the prosecution or the trial court. There was a clear failure to comply with the substantive and procedural requirements of section 1050, subdivision (b).

Without a justifiable explanation for the lack of notice and supporting documentation, the trial court would have been required to deny Boothe's request pursuant to subdivision (d) of the statute. However, it appears the court and counsel addressed the merits of the continuance motion without discussing its untimeliness under subdivision (b), such that no hearing was held to determine whether good cause existed

5.

for the lack of notice.  Thus, while we reject the notion that Boothe's request was timely, it is appropriate to address the merits of her remaining arguments on appeal.

**The Denial of a Continuance Did Not Violate Boothe's Constitutional Rights**

Boothe argues that the trial court violated her rights to due process and counsel of choice as guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, and equivalent provisions under the state Constitution.  "'The right to the effective assistance of counsel "encompasses the right to retain counsel of one's own choosing."'  Further, 'due process of law comprises a right to appear and defend with retained counsel of one's own choice.'" (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 849 (*Jeffers)*, citations omitted.)

Boothe's contentions do not implicate *Marsden*[4] rights because she never made a motion to substitute counsel, did not seek to replace her appointed counsel with other appointed counsel, and did not assert or imply that her attorney's performance was constitutionally inadequate.  (*People v. Blake* (1980) 105 Cal.App.3d 619, 622-623; *People v. Molina* (1977) 74 Cal.App.3d 544, 548-549.)  The public defender stated that Boothe was "in the process of trying to hire an attorney for a motion for new trial," indicating her desire to switch from appointed counsel to retained counsel.  Trial courts are not required to analyze a defendant's reasons for wanting to change attorneys in this type of scenario.  (*Molina, supra,* at pp. 548-549; *People v. Courts* (1985) 37 Cal.3d 784, 795, fn. 9 (*Courts*).)  The issue is whether the trial court acted within its authority when it denied Boothe's request to continue the sentencing hearing.

A continuance may only be granted for good cause, and trial courts have broad discretion to determine whether good cause exists.  (§ 1050, subd. (e); *People v. Alexander* (2010) 49 Cal.4th 846, 934 (*Alexander*).)  The denial of a motion for continuance is reviewed for abuse of discretion.  (*People v. Mungia* (2008) 44 Cal.4th

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

6.

1101, 1118.) This standard applies to motions to continue sentencing hearings as well as requests for time to allow a defendant to retain different counsel. (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 77 [continuance to prepare a new trial motion]; *Jeffers*, *supra*, 188 Cal.App.3d at p. 850 [continuance to permit representation by retained counsel].) The party challenging the denial of a continuance bears the difficult burden of establishing that the court's discretion was abused. (*People v. Beames* (2007) 40 Cal.4th 907, 920 (*Beames*).)

Our analysis considers that the right to defend with retained counsel "is not absolute: it must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People v. Byoune* (1966) 65 Cal.2d 345, 346.) A continuance to obtain counsel may be denied if the defendant has been unjustifiably dilatory. (*Ibid*; *Courts, supra,* 37 Cal.3d at pp. 790-791.) The trial court is generally "within its discretion to deny a last-minute motion for continuance to secure new counsel." (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) "'[O]nly an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel." (*Alexander*, *supra*, 49 Cal.4th at pp. 934-935.)

The trial court's broad discretion was not abused in this case. At the conclusion of trial, Boothe was advised to "get [her] affairs in order" and prepare for immediate incarceration at the time of sentencing. Boothe was convicted on October 6, 2011, and nearly five weeks elapsed before she was sentenced on November 9, 2011. She did not seek a continuance during the interim. Instead, Boothe waited until the morning of the date reserved by the court, the prosecutor, and the victim's family for sentencing. No explanation was given for the last-minute nature of her request.

Apart from the untimeliness, Boothe had not yet secured new counsel, offered no evidence of her efforts to find new counsel, and did not identify a particular attorney

7.

whom she wished to retain. This further supports the denial of her request. (See *People v. Johnson* (1970) 5 Cal.App.3d 851, 858-859 [defendant asserted his desire to retain private counsel on the first day of trial without any evidence of his efforts to obtain representation].) Trial courts have greater latitude to deny a continuance when the prospect of retaining private counsel is "still quite speculative at the time the motion for continuance [i]s made." (*Courts*, *supra*, 37 Cal.3d at p. 791, fn. 3.)

The constitutional protections upon which Boothe relies extend to defendants who are "'*financially able* to retain an attorney of [their] own choosing.'" (*Courts*, *supra*, 37 Cal.3d at p. 790, italics added.) Given that Boothe was represented by a deputy public defender, she was presumably unable to employ counsel. (See § 987, subd. (a).) This is consistent with her testimony that she took money from the victim to help alleviate her own dire financial situation. The court also reviewed a probation report which indicated that Boothe's monthly expenses more than twice exceeded her monthly income. The lack of evidence that Boothe was financially capable of hiring private counsel is another factor supporting the trial court's decision. (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367 ["There is no evidence defendant attempted to retain counsel, or had even taken steps to secure funds to hire private counsel"].)

Boothe's attempt to analogize this case to *People v. Trapps* (1984) 158 Cal.App.3d 265 (*Trapps*) is not persuasive. The *Trapps* defendant requested a continuance of his sentencing hearing because he was in the process of seeking counsel to replace a court-appointed attorney with whom he claimed to have a conflict. (*Trapps*, *supra*, 158 Cal.App.3d at p. 270.) The trial court denied his request. The Court of Appeal found this was an abuse of discretion in light of the following circumstances: "This was a sentencing, not a trial. The sentencing which took place was not a lengthy proceeding and no witnesses were called. It had already been delayed three months, and appropriately so, to enable the Department of Corrections to do a diagnostic study of Trapps. Trapps had other charges still pending in the same court. When Trapps moved to

continue his sentencing, he had just returned from the study and was not unjustifiably dilatory in his request." (*Id*. at pp. 271-272.)

In contrast to the *Trapps* defendant, Boothe was not in custody prior to sentencing. She had more than a month between conviction and sentencing to search for new counsel or, at the very least, to give notice of her need for additional time. Boothe's request was made on the day of the sentencing hearing with no prior filing of a motion to continue, no advance notice, and no explanation for the delay.

Several other factors distinguish this case from *Trapps*. Boothe made no complaints about her trial counsel. She did not have other charges still pending in the same court. Her request contemplated not only a postponement of sentencing, but an indefinite delay to allow for proceedings related to a new trial motion. Other witnesses were scheduled to appear at the hearing; one of the victim's family members had travelled a considerable distance to make a statement to the court.

The circumstances reflected in the record support the conclusion that Boothe was unjustifiably dilatory in making her request and that a continuance would have disrupted the orderly administration of justice. Given the factors weighing in favor of the trial court's decision, and the lack of justification for the timing of her request, Boothe has not carried her burden of demonstrating that the trial court's ruling was unreasoning and arbitrary so as to violate her constitutional rights.

**The Denial of a Continuance To Allow Further Investigation Was Not An Abuse of Discretion**

Although her briefs focus on the right to choice of counsel, Boothe's request for a continuance was based primarily upon the need to investigate grounds for a new trial motion. It was appropriate for the trial court to determine whether a continuance would have been useful for that purpose. (*People v. Beeler* (1995) 9 Cal.4th 953, 1003.) "[T]o demonstrate the usefulness of a continuance a party must show both the materiality of the

evidence necessitating the continuance and that such evidence could be obtained within a reasonable time." (*Ibid*.)

It was also proper for the court to evaluate the likelihood that a new trial motion would be granted. When a criminal defendant requests time for further investigation, the trial court must consider """"not only the benefit which the moving party anticipates but also the likelihood that such benefit will result . . . ."""" (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) A continuance may be granted to investigate exculpatory evidence, but the speculative nature of what is to be gained justifies its denial. (*People v. Gatlin* (1989) 209 Cal.App.3d 31, 40-42.)

Boothe's trial counsel told the court that he was "purposely being vague" with regard to the evidence his client hoped to uncover. When pressed for details, counsel insinuated that the investigation would focus on discovering when a particular witness, Cathy Bedford, first learned that the victim, Ollie Donaldson, was suffering from cancer. The goal, apparently, was to impeach Ms. Bedford's testimony that emotional distress experienced by the victim as a result of Boothe's misconduct (rather than the effects of stomach cancer) caused the victim's physical and mental health to deteriorate.

Boothe had also hoped to support a new trial motion with evidence that photographs of the victim's apartment, which were shown to the jury, had been taken while the victim was in the process of moving out. The perceived significance of this fact was never fully explained. The defense argued that the photographs were misleading because they did not reflect the victim's ownership of household items such as lotions, a microwave, and a toaster oven.

We find no error in the denial of Boothe's request for a continuance to investigate and prepare a motion for new trial on these grounds. Evidence supporting a motion for new trial must not only be material, but "such as to render a different result probable on a retrial of the cause." (*People v. Delgado* (1993) 5 Cal.4th 312, 328.) Boothe fails to

explain how additional information about the photographs of her grandmother's apartment could have possibly satisfied these requirements.

The anticipated impeachment of Cathy Bedford was equally doubtful in terms of materiality and impact. Ms. Bedford was not an eyewitness to Boothe's crimes, nor did her testimony regarding the victim's failing health tend to prove or disprove any element of the offenses for which Boothe was charged. It has long been held that "newly discovered evidence which would merely impeach or discredit a witness does not compel the granting of a new trial, and a new trial will not ordinarily be granted for newly discovered evidence of that character." (*People v. Moten* (1962) 207 Cal.App.2d 692, 698, citation omitted; see also, *People v. Green* (1982) 130 Cal.App.3d 1, 11 ["As a general rule, 'evidence which merely impeaches a witness is not significant enough to make a different result probable . . . .'."].)

The trial court was within its discretion to conclude that the pursuit of such evidence would not have been useful. It also gave due consideration to the length of the trial, the number of witnesses who testified, the recent death of the victim, and how each of those factors weighed against the likelihood that a motion for new trial would be granted. Under the controlling standard of review, the discretion to deny a continuance "is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*Beames*, *supra*, 40 Cal.4th at p. 920.) Boothe has not shown that such an abuse occurred in this case.

11.

## **DISPOSITION**

The judgment is affirmed.

_____
Gomes, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Cornell, J.

12.