[Crim. No. 17218. Fourth Dist., Div. Three. July 12, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EARL TRAPPS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Parts II through IV are not published as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

## COUNSEL

Gail Polack, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, John W. Carney and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—Robert Earl Trapps was convicted of burglary (Pen. Code, § 459),[1] forcible oral copulation (§ 288a, subd. (c)), forcible sodomy (§ 286, subd. (c)) and forcible rape (§ 261, subd. (2)). We address five issues on appeal. Did the term "reasonable and good faith belief" in the jury instructions require *sua sponte* explanation or amplification? Were pictures taken from Trapps at the time of his arrest a few hours after the assault admissible?* Was it error to allow the victim to testify she told Trapps she was a virgin?* Was there sufficient evidence to support each of the four charges?* Was it an abuse of discretion to deny Trapps' request for a continuance of sentencing to retain counsel?

Elizabeth P. awoke on November 4, 1981, between 3 and 4 a.m. to find Trapps, a casual acquaintance, crawling on the floor at the foot of her bed. When she screamed he jumped on top of her, covered her mouth with his hand, and told her not to scream. He said, "I want some pussy, and if you don't give it to me, I have a gun, and I'll kill you."

---

[1]All references are to the Penal Code unless otherwise stated.

*See footnote, *ante,* page 265.

Elizabeth heeded the threat. At Trapps' direction she submitted to sodomy twice, sexual intercourse twice and mutual oral copulation once. Two times during the assault Elizabeth told Trapps she was a virgin. He repeatedly announced his future plans for their relationship. He also explained how he and a friend had broken in and how the friend took some marijuana from a pocketbook. Trapps fell asleep with his arm around Elizabeth. At about 5:30 a.m. she woke him up and implored him to leave before her roommate awoke. Trapps asked for her telephone number which she wrote down for him because she was afraid. He then left.

Her roommate found Elizabeth hysterical. When she calmed down enough to say she had been raped, the police were called. At about 8 that morning they arrested Trapps after finding him asleep in the laundry room just across from Elizabeth's apartment. Marijuana was discovered in the back seat of the police car used to transport Trapps to the police station. At trial the roommate identified it as hers by the unusual container. At booking, a police officer took from Trapps four pages of pictures depicting sexual acts including sodomy and oral copulation.

Trapps' defense was consent. At the police station and at trial, Trapps recounted the tale of a late night visit to Elizabeth to discuss problems in his life leading to an invitation to her bedroom and his skillful initiation of a virgin into the rites of lovemaking. Trapps denied the acts of sodomy.

I

The jury was correctly instructed on reasonable belief of consent as defenses to rape (CALJIC No. 10.23), oral copulation (CALJIC No. 10.40.1) and sodomy (CALJIC No. 10.50.1).[2] Each instruction requires the defendant have a "reasonable and good faith belief that the female person voluntarily consented . . ." to engage in the particular sex act at issue. Trapps concedes these instructions were correct and he did not ask the court to explain or amplify any of the terms. ■ On appeal, however, he argues the trial court had a *sua sponte* duty to explain or amplify two of them, "reasonable" and "good faith."

---

[2]CALJIC No. 10.23 reads: "It is a defense to a charge of forcible rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge."

CALJIC Nos. 10.40.1 and 10.50.1 are identical to 10.23 for purposes here, substituting only a reference to the particular sex act at issue.

Recently we decided a similar issue in *People* v. *Brucker* (1983) 148 Cal.App.3d 230 [195 Cal.Rptr. 808]. Brucker argued the trial court was under a *sua sponte* obligation to define the term "willful" as applied to the crime of battery with serious bodily injury. (*Id.*, at p. 235.) We rejected this contention, holding: "[T]he court correctly instructed the jury on the general legal principles relevant to the proof of the crime of battery. Defendant argues the instructions given were nevertheless incomplete since the term 'willful' needed amplification or explanation; however, he did not request such amplification and thus failed to preserve his claim of error on appeal. [Citations.] The trial court has no *sua sponte* obligation to give an instruction clarifying or amplifying instructional terms unless such terms have a legal technical meaning. [Citations.] [¶] The term 'willful' as used in the context of the crime of battery 'implies simply a purpose or willingness to commit the act.' [Citations.] Such legal definition is no different than that 'commonly understood by those familiar with the English language' [citation], and must therefore be presumed within the understanding of jurors. Accordingly, we conclude the court was not required to explain or amplify the word 'willful' on its own motion. Failure to do so does not constitute reversible error." (*Id.*, at p. 239, fns. omitted.)

Here, too, the court correctly instructed the jury on the general legal principles relevant to the proof of forcible rape, forcible sodomy and forcible oral copulation. We cannot conclude the terms used in the phrase "reasonable and good faith belief" have a technical meaning.

" 'We are here dealing with ordinary English words of common acceptance. [. . .] It is ordinary practice in negligence cases to instruct on the standard of care of a *reasonable* man. . . . The phrase is not esoteric, such as *res ipsa loquitur*, nor is it confusingly similar to other more common words . . . [as is] "proximate" or some of those employed in patent law. [¶] Because of the very commonness of the words, the straining for making the clear more clear has the trap of producing complexity and consequent confusion.' . . . . [Citation.]" (*People* v. *Brigham* (1979) 25 Cal.3d 283, 308-309 [157 Cal.Rptr. 905, 599 P.2d 100], conc. opn. of Mosk, J.) In *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], the Supreme Court used the terms "good faith," "genuinely," and "bona fide" interchangeably to require the belief be honestly held. (See *People* v. *Winters* (1966) 242 Cal.App.2d 711, 716 [51 Cal.Rptr. 735].) A jury which did not understand these terms would not understand an explanation of them. (*People* v. *Brigham, supra,* at pp. 292-316, conc. opn. of Mosk, J.; *People* v. *Halbert* (1926) 78 Cal.App. 598, 612 [248 P. 969].) The trial court did not have a *sua sponte* obligation to amplify or explain the phrase "reasonable and good faith belief."

## II*

. . . . . . . . . . . . . . . . . . . . . . .

## V

At the original sentencing hearing on April 9, 1982, the trial court sent Trapps for a diagnostic study by the Department of Corrections pursuant to section 1203.03 with a return date of June 1, 1982. When Trapps was returned to the superior court, his court-appointed attorney was asked if there was any legal cause why judgment should not be pronounced. Counsel informed the court Trapps wished a continuance to retain a different lawyer.

The court asked Trapps why he wanted the sentencing continued. Trapps replied, "Well, I—your Honor, I'm—shall I say—in the process of seeking counsel to take the case over with regard to the remaining counts, by reason of I feel at this time there is a small conflict of interests between me and Mr. Usher. [¶] And the counsel—I still feel, your Honor, that I had an unjust trial and illegal conviction. And I'd like to pursue this case a little further, take more extra time to kind of investigate the inconsistencies of the case."

The court reminded Trapps a motion for new trial had already been denied and he could bring up these issues on appeal. The court again asked Trapps, "And is there any reason, as I said, you feel that Mr. Usher isn't—can't properly handle the sentencing—" and Trapps replied, "That's what I believe, your Honor." The court continued, "Well, in other words you indicate there's somewhat of a conflict. What is that you're referring to?" Trapps said, "Well, your Honor, I just don't feel that Mr. Usher is properly handling this case. I should have had him substituted previously, but I kind of figured that it would show a little incompetence, negligence on how the case—"

The court interrupted; it declared counsel had given Trapps excellent representation and said it did not see why counsel could not represent him for sentencing. The continuance was denied, and he was sentenced.

■ "Although there is not an *absolute* right to be represented by a particular attorney, the courts will make all *reasonable* efforts to insure that a defendant financially able to retain an attorney of his own choice can be represented by that attorney. Under certain circumstances, due process is

---

*See footnote, *ante,* page 265.

denied to a defendant who is not granted a continuance in order to secure a private attorney of his own choosing. [Citation.] A court will not interfere with the defendant's right to be represented by counsel of his choice unless to accommodate him would result in a disruption of the ordinary process of justice to an unreasonable degree. [Citation.] Obviously, each case is to be tried on its facts and in each case there must be a determination as to whether or not the trial court abused its discretion in denying a continuance for this or other grounds." (*People* v. *Johnson* (1970) 5 Cal.App.3d 851, 858 [85 Cal.Rptr. 485], italics in original.) "Generally speaking defendant is entitled to a continuance to secure an attorney of his own choice. [Citations.]" (*People* v. *Reaves* (1974) 42 Cal.App.3d 852, 855-856 [117 Cal.Rptr. 163].)

The Supreme Court couches the issue in even stronger terms: "We have held that a criminal defendant cannot be deprived of the *opportunity* to retain counsel of his choice except when bestowal of that benefit would prejudice him or unreasonably disrupt the orderly administration of justice. [Citation.]" (*People* v. *Haskett* (1982) 30 Cal.3d 841, 852 [180 Cal.Rptr. 640, 640 P.2d 776], italics added.) " '[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. [Citation.]' " (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868].) ■ However, ". . . the right of a defendant to appear and defend with retained counsel of his own choice is not absolute [citation] . . . the burden is on the defendant to establish an abuse of discretion; and . . . in the absence of showing an abuse, the reviewing court will not disturb the ruling of the trial court. [Citation.]" (*People* v. *Blake* (1980) 105 Cal.App.3d 619, 624 [164 Cal.Rptr. 480].)[3]

■ Under the circumstances of this case the trial court abused its discretion by denying Trapps' motion for a continuance. Although Trapps was less than articulate, "[t]he semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right." (*People* v. *Marsden* (1970) 2 Cal.3d 118, 124 [84 Cal.Rptr. 156, 465 P.2d 44].) The colloquy between them demonstrates the trial court clearly understood Trapps' request.

A reasonable continuance would not have disrupted the orderly administration of justice. This was a sentencing, not a trial. The sentencing which took place was not a lengthy proceeding and no witnesses were called. It had already been delayed three months, and appropriately so, to enable the

---

[3]We note in passing this is *not* a question of *Marsden* error for failure to inquire into the reasons for dissatisfaction with appointed counsel. (*Id.*, at pp. 622-625.)

Department of Corrections to do a diagnostic study of Trapps. Trapps had other charges still pending in the same court. When Trapps moved to continue his sentencing, he had just returned from the study and was not unjustifiably dilatory in his request. (See *People* v. *Rhines* (1982) 131 Cal.App.3d 498, 506 [182 Cal.Rptr. 478].) The record does not reveal a good reason, let alone a compelling one, why Trapps should not have been given a reasonable continuance to retain counsel.

Was the error prejudicial? We must conclude it was. This record does not permit us to ascertain if Trapps would have been able to retain counsel, but that is not the test. The denial of Trapps' motion without providing a reasonable continuance by its very nature denied him a fair sentencing. This is a critical stage of the prosecution. (See *In re Cortez* (1971) 6 Cal.3d 78, 88 [98 Cal.Rptr. 307, 490 P.2d 819]; *In re Perez* (1966) 65 Cal.2d 224, 229-230 [53 Cal.Rptr. 414, 418 P.2d 6].) It is futile to conjecture about the "harmlessness" of the error which means we cannot conclude beyond a reasonable doubt this denial of due process had no effect whatsoever on Trapps' sentencing. (Cf. *People* v. *Lewis* (1978) 20 Cal.3d 496, 499 [143 Cal.Rptr. 138, 573 P.2d 40]; *People* v. *Cruz* (1978) 83 Cal.App.3d 308, 324-325 [147 Cal.Rptr. 740].)

The remedy to which this entitles Trapps presents a thornier problem. We will return Trapps, to the extent possible, to the position he would have occupied had the error not occurred. This does not automatically compel resentencing. He will be afforded the *opportunity,* if he so desires,[4] to obtain different representation than he had at the original sentencing. Only if he avails himself of that opportunity will he be entitled to resentencing.

Section 1260 empowers us to ". . . remand the cause to the trial court for such further proceedings as may be just under the circumstances." ■ It is appropriate to remand for further proceedings to vindicate constitutional rights. (See *People* v. *Anderson* (1976) 59 Cal.App.3d 831 [131 Cal.Rptr. 104]; *People* v. *Simpson* (1973) 30 Cal.App.3d 177 [106 Cal.Rptr. 254]; *People* v. *MacDonald* (1972) 27 Cal.App.3d 508 [103 Cal.Rptr. 726].)

Upon remand, unless Trapps agrees otherwise (*ante,* fn. 4), the trial court shall hold a hearing within 30 days of the filing of the remittitur in that

---

[4]We raised this issue and requested further briefing addressing it. As a practical matter, Trapps may very well have found his niche in the prison system and not desire any belated vindication of his rights. When this opinion becomes final, Trapps' appellate counsel shall immediately determine from Trapps if he desires the opportunity to be resentenced. If he does not, he should so indicate in writing through appellate counsel, to the superior court at the earliest opportunity. The superior court, upon receipt of such communication, may simply let the sentence stand and the judgment will then be deemed affirmed in its entirety.

court with Trapps present and give him three choices: (1) a reasonable continuance of not less than 30 days, unless Trapps agrees, to enable Trapps to retain private counsel, (2) the right to represent himself for resentencing pursuant to *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], or (3) the right to attempt to demonstrate to the court his prior appointed counsel should have been replaced with other appointed counsel pursuant to *People* v. *Marsden, supra,* 2 Cal.3d 118.

While the latter two options are beyond what Trapps originally requested, the right to counsel is so fundamental we see no reason why Trapps should not be afforded the *opportunity* for counsel of his choice to the fullest reasonable extent. If Trapps retains new counsel within a reasonable time, chooses to represent himself and is granted that right, or convinces the trial court new counsel should be appointed, the trial court shall vacate the sentence and appoint a time for pronouncing judgment as provided in section 1191. If Trapps fails to retain counsel within a reasonable time, does not represent himself, and does not demonstrate to the trial court he should have new appointed counsel, the trial court will make a finding indicating the reason for not appointing a new time for pronouncing judgment. This finding will be accompanied by a further order the judgment of conviction is to stand and the vacation of judgment is denied. (See *People* v. *MacDonald, supra,* 27 Cal.App.3d 508, 511.)

The judgment is affirmed with respect to the determination of guilt and remanded with respect to sentencing for further proceedings consistent with the views expressed in this opinion.

Wallin, Acting P. J., and Crosby, J., concurred.