Filed 12/24/13  P. v. Kalem-Grabow CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B240395 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. NA087850) |
| LISA KALEM-GRABOW, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles D. Sheldon, Judge.  Affirmed.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Lisa Kalem-Grabow (Kalem-Grabow) was convicted of grand theft and sentenced to two years in county jail based on evidence that she misappropriated funds from her employer, New City Public School (New City). She appeals on the theory that the trial court erred when it instructed on the claim of right defense by giving CALJIC No. 9.44 instead of CALCRIM No. 1863.

According to Kalem-Grabow, it is likely she would have been acquitted if the jury was instructed pursuant to CALCRIM No. 1863 because it establishes that a claim of right defense is available when a defendant takes money in an attempt to collect a debt and had a good faith albeit mistaken, untenable or unreasonable belief that she had a right to that money. She bases her contention, expressly or tacitly, on the following: (1) a supervisor signed a termination letter expressly stating that Kalem-Grabow's last day as controller at New City would be July 2, 2010; (2) she was orally told that her last day would be June 30, 2010, or July 2, 2010; (3) the termination letter specified that she was entitled to vacation pay as well as $5,000 in severance pay; (4) she arranged to have check No. 14392 for $26,398.39 issued to herself to cover vacation pay and severance pay; (5) she arranged to have check No. 14391 for $5,598.43 issued to herself partly to cover accrued personal days, and partly to compensate her for a period of time during which she was underpaid due to a payroll error; (6) when she cashed the checks on June 21, 2010, she was attempting to collect debts and had a good faith belief that she was entitled to those funds; and (7) it is irrelevant that (a) in July 2010, she was asked to and did continue working at New City but opted to keep the funds, and (b) she bribed a part-time New City employee to make it look like check No. 14392 was voided and no funds were actually transferred.

We find no error and affirm because the trial court properly instructed the jury pursuant to CALJIC No. 9.44. Moreover, contrary to the position taken by Kalem-Grabow, California law prohibits a claim of right defense when a person takes money in an attempt to collect a debt.

2

## FACTS

### *Kalem-Grabow's Prior Financial Misconduct*

From November 1, 2002, to August 15, 2005, Kalem-Grabow worked for Para Los Ninos School as director of finance for contract compliance. In that job, she was in control of payroll. In October 2005, she used three checks from Para Los Ninos without its permission: one check for a $600 donation for a dinner at the Zimmer Museum, one check to buy 10 $100 gift cards from Home Depot, and one check for $4,248 to pay property taxes for her residence.

### *New City*

Ted Hamory (Hamory) was the cofounder and Executive Director of New City, Kimberly Ward (Ward) was the school's Director of Development, and Kalem-Grabow was the Controller. Kalem-Grabow hired Araceli Martinez (Martinez) part-time to be responsible for data entry, accounts payable, accounts receivable and issuing paychecks.

Kalem-Grabow had access to the school's checks. Before writing a check for a large amount or anything out of the ordinary, she needed Hamory's approval. Also, Hamory had to approve an employee's final check on his or her last day. An employee was never given an advance on that payment.

### *Kalem-Grabow's Salary*

In 2008, for the first six months of Kalem-Grabow's tenure as controller, her salary was $100,000 per year. After six months, it increased up to $105,000. From July 1, 2009, to June 30, 2010, all administrators at New City took a 5 percent pay cut. With the pay cut, Kalem-Grabow's annual salary should have been $99,750. However, New City reduced her salary to $95,000. On her own accord, Kalem-Grabow gradually increased her salary because she thought she deserved it. No one at New City approved the pay increase.

### *Kalem-Grabow's Misappropriations in June 2010*

Hamory and Ward decided to leave New City in June 2010. It was unclear whether Kalem-Grabow's job was going to survive the transition to new leadership. As a contingency in case she was terminated, she wrote a letter, which Hamory signed. The

letter stated: "[Kalem-Grabow's] last day at [New City] will be July 2nd, 2010. [¶] When you process payroll, please include in her next check her vacation, which accrues at eight weeks per year. [¶] Finally, please pay her severance sum of $5,000. [¶] Please make sure she is not terminated on the paychex system so that her benefits do not drop. We will continue to pay her health insurance for the next six months." Hamory told Kalem-Grabow that it was likely that her last day would be June 30, 2010.

Kalem-Grabow gave Martinez a spreadsheet indicating payments that should be issued to Hamory, Ward and Kalem-Grabow for severance and vacation. Check No. 14391 for $5,598.43 and check No. 14392 for $26,398.39[1] were issued to Kalem-Grabow on June 18, 2010. In Quickbooks, New City's check ledger, a payee for check No. 14392 was not listed. She deposited the checks on June 21, 2010, into her personal account, and told Martinez to void check No. 14392 out of Paychex, New City's payroll system, which made it appear as though the money was never transferred.

Hamory did not approve check No. 14391 or check No. 14392.

### New City's Decision to Retain Kalem-Grabow; Kalem-Grabow's Failure to Return the Money that She Misappropriated in June 2010

On June 28, 2010, Sabrina Lee Bow (Bow) succeeded Hamory as New City's executive director. She retained Kalem-Grabow to continue overseeing a construction project. Kalem-Grabow did not return any of the money she acquired through the two checks.

### The Investigation

While reviewing payroll reports in October 2010, Bow noticed the two checks that had been issued to Kalem-Grabow in June 2010. It appeared to Bow that the transaction for check No. 14392 had been voided.

---

[1]     Kalem-Grabow's expert testified that check No. 14391 represented payment for personal days and unpaid salary, and check No. 14392 represented severance and vacation pay after taxes were withheld.

New City hired Maria Holm (Holm), a certified fraud examiner, who verified that both checks had cleared New City's bank. Kalem-Grabow was placed on administrative leave, and New City conducted an investigation. Soon after, Kalem-Grabow spoke to Martinez, mentioned something about an auditor, and said not to return the auditor's calls.

When Holm spoke with Kalem-Grabow, she said that "she had . . . cashed the check, knew it was wrong, but it was owed to her." She also said that she needed the money because she had a delinquent mortgage and credit card bills to pay. She admitted that she told Martinez to void check No. 14392 in the payroll system in exchange for giving Martinez health insurance for six months. As justification for voiding the check in the system, Kalem-Grabow said she wanted to prevent it from being reported so she could avoid paying taxes.

As part of her investigation, Holm discovered that Kalem-Grabow had increased her own salary.

### The Information; Trial; Verdict; Sentencing; Judgment

Kalem-Grabow was charged with grand theft in violation of Penal Code section 487, subdivision (a).[2] It was alleged that she unlawfully took $41,996.82 from New City.[3] The matter proceeded to trial and was then submitted to a jury. The jury found Kalem-Grabow guilty. She was sentenced to two years in county jail, and judgment was entered.

This timely appeal followed.[4]

---

[2] All further statutory references are to the Penal Code.

[3] Neither party explains how the People calculated $41,996.82. Presumably, it is the amount of the two checks plus the amount of unauthorized monthly salary increases that Kalem-Grabow gave herself.

[4] The trial court ordered a restitution hearing. That hearing was scheduled for a date after this appeal was filed. The trial court's restitution order, if any, is not subject to review in this appeal.

**DISCUSSION**

## I. Standard of Review.

We conduct a de novo review when assessing whether a trial court correctly instructed a jury on the principles of law applicable to a case. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

## II. Claim of Right.

"Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him." (§ 511.) Pertinent to this case, section 490a provides: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefore." In light of section 490a, section 511 sets forth a defense that is applicable to grand theft. (*People v. Holmes* (1970) 5 Cal.App.3d 21, 24–25 (*Holmes*) [through section 490a, section 511 is applicable to theft crimes].)

The defense provided by section 511 does not apply when a defendant takes money from an employer to satisfy a debt for unpaid wages. (*People v. Proctor* (1959) 169 Cal.App.2d 269, 277 (*Proctor*) [when a defendant stole a check and, in essence, claimed the proceeds as "an offset against a debt due her for overtime wages," she was barred from relying on section 511 as a defense to embezzlement because that statute "does not excuse the unlawful retention of the property of another to offset or pay demands held against him"].

The *Proctor* rule was reaffirmed in *People v. Creath* (1995) 31 Cal.App.4th 312, 318, which stated: "Under . . . section 511, a claim-of-right defense to embezzlement is not established where an employee unilaterally determines that he or she is entitled to certain wages and thereafter, without authorization, appropriates the property of the employer in purported payment of such wages."

**III. The Trial Court Properly Instructed the Jury.**

The trial court had a duty to "instruct on the general principles of law relevant to the issues raised by the evidence. [Citation.]" (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) Because the facts implicated a claim of right defense, the trial court was required to give the jury an appropriate instruction.

Using CALJIC No. 9.44, the trial court instructed the jury on the claim of right defense as follows: "An essential element of the crime of theft by larceny is a specific intent to permanently deprive person or victim of their property. That specific intent does not exist if the alleged perpetrator had a good faith claim of right to title or ownership of the property taken from the victim. In other words, if a perpetrator seeks to take possession of property in which she honestly believes she has a good faith claim of ownership, she doesn't have . . . the required specific intent. [¶] However, the required specific intent exists if, rather than seeking to . . . take specific property[,] . . . the perpetrator is attempting to satisfy, settle, or otherwise collect on a debt, liquidated or unliquidated, and specifically intends permanently to deprive the victim of their property in furtherance thereof. [¶] If, after a consideration of the evidence, you [have] a reasonable doubt the defendant possessed that required specific intent, she gets a finding of not guilty rather than guilty."

According to Kalem-Grabow, the trial court committed instructional error because CALJIC No. 9.44 is an incorrect statement of the law. She contends that the correct law is set forth in CALCRIM No. 1863, which provides: "If the defendant obtained property under a claim of right, [she] did not have the intent required for the crime of [theft]. [¶] The defendant obtained property under a claim of right if [she] believed in good faith that [she] had a right to the specific property or a specific amount of money, and [she] openly took it. [¶] In deciding whether the defendant believed that [she] had a right to the property and whether [she] held that belief in good faith, consider all the facts known to [her] at the time [she] obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely

7

unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] [The claim-of-right defense does not apply to offset or pay claims against the property owner of an undetermined or disputed amount.] [¶] [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.] [¶] If you have a reasonable doubt about whether the defendant had the intent required for [theft], you must find [her] not guilty of [theft]."

We analyze Kalem-Grabow's specific contentions below.

A. *Good faith belief.*

Both CALJIC No. 9.44 and CALCRIM No. 1863 recognize that the specific intent necessary for theft is negated if a defendant had a good faith claim of right to property. The critical difference, according to Kalem-Grabow, is that while CALJIC No. 9.44 explains that a defendant must honestly believe she has a good faith claim, CALCRIM No. 1863 explains that a defendant can hold a good faith belief even if that belief is mistaken or unreasonable.

Kalem-Grabow urges us to hold that CALJIC No. 9.44 is an incomplete statement of the law because it does not contain language that would allow a jury to find a good faith belief if a defendant's belief was mistaken, untenable or unreasonable. We decline. When a section 511 claim of right defense is implicated by the evidence, case law requires a trial court to instruct, inter alia, on the good faith element. (*People v. Stewart* (1976) 16 Cal.3d 133, 139.) But because the term "good faith" does not have a technical meaning, a trial court need not explain it. (*People v. Trapps* (1984) 158 Cal.App.3d 265, 269 [no sua sponte duty to amplify the meaning of good faith when instructing a jury that if a defendant entertained a reasonable and good faith belief that the victim voluntarily consented to sexual intercourse, then the defendant had a defense to the charge of forcible rape].) We conclude that the jury was adequately instructed under CALJIC No. 9.44 because the concept of good faith is sufficiently common and accessible for laymen to

understand, and therefore the jury understood that a belief can be held in good faith even if it is mistaken, untenable or unreasonable.

B. *Collection of a debt*.

Kalem-Grabow argues that the claim of right defense applies when a defendant takes money in a good faith attempt to collect on a debt, and that this point is reflected in CALCRIM No. 1863 but not CALJIC No. 9.44. As a consequence, she argues that CALJIC No. 9.44 was erroneously given. This argument fails because, as held by *Proctor*, the claim of right defense provided in section 511 does not apply to debt collection efforts. More specifically, it does not apply when a defendant takes money from an employer to satisfy a claim for unpaid wages. Kalem-Grabow admits in her opening brief that severance pay and vacation pay are wages under California law. (*Green v. Obledo* (1981) 29 Cal.3d 126, 141; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Battista v. FDIC* (9th Cir. 1999) 195 F.3d 1113, 1120, fn. 8.) She further admits that she was attempting to collect debts when she cashed the checks. We conclude that CALJIC No. 9.44 accurately states that the claim of right defense does not apply to the collection of a debt. In addition, we conclude that CALJIC No. 9.44 was properly given in this case.

C. *Consideration of all facts known to the defendant*.

CALCRIM No. 1863 provides: "In deciding whether the defendant believed that [she] had a right to the property and whether [she] held that belief in good faith, consider all the facts known to [her] at the time [she] obtained the property, along with all the other evidence in the case." CALJIC No. 9.44 is briefer and merely provides that the jury should consider all of the evidence.

Kalem-Grabow suggests that CALJIC No. 9.44 is an incomplete statement of the law because it did not direct the jury to consider her good faith during any specific time frame. Noticeably absent from her briefs is any citation to case law or statutes either requiring a trial court to use the specific language in CALCRIM No. 1863, or rejecting the language in CALJIC No. 9.44. We conclude that CALJIC No. 9.44 is accurate and sufficiently clear. Because the instruction refers to the taking of property, it requires the

9

jury to determine whether the defendant acted pursuant to a good faith claim of right at the time of the taking. Consequently, CALJIC No. 9.44 sufficiently directs a jury to assess good faith at the relevant time.

## IV. Harmless Error.

Even if CALJIC No. 9.44 is an incomplete statement of law with respect to the good faith element and the relevant time frame for considering a defendant's good faith, any error was harmless under both federal and state law. (*Chapman v. California* (1967) 386 U.S. 18, 24 [no reversal if error is harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [no reversal unless it is reasonably probable that a result more favorable to the appeal would have been reached in the absence of the error].) As she readily admits in her appellate briefs, Kalem-Grabow misappropriated money from New City in an attempt to collect a debt. Due to the foregoing, the claim of right defense was unavailable.

Additionally, it bears mention that Kalem-Grabow fails to argue that the money was "appropriated openly and avowedly" as required by section 511. In our view, the evidence does not support that element of the defense because she had the checks issued to herself without Hamory's approval, and there is no evidence that any New City administrators knew about the checks.

## DISPOSITION

The judgment is affirmed.

ASHMANN-GERST, Acting P. J.

We concur:

CHAVEZ, J.
FERNS, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.