Filed 1/13/22  P. v. Stephens CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077175 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCS307577, SCS278168) |
| RAYMOND STEPHENS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia Garcia, Judge.  Judgment of conviction affirmed; sentence vacated and remanded with directions.

Karissa Ann Adame, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

After Raymond Stephens violated probation in San Diego Superior

Court Case No. SCS278168, a jury convicted him in Case No. SCS307577 of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1); count 1); carrying a loaded firearm in a vehicle (§ 25850, subd. (a); count 2); carrying a loaded firearm in a vehicle (§ 25850, subd. (a); count 3); and possessing ammunition while having a felony conviction (§ 30305, subd. (a)(1); count 4). The jury found true allegations that as to count 2, Stephens was previously convicted of a felony within the meaning of section 25850, subdivision (c)(1), and as to count 3 that he was not in lawful possession of the firearm or was prohibited from possessing and acquiring a firearm within the meaning of section 25850, subdivision (c)(4). Stephens admitted he had suffered a prior strike conviction (§§ 667, 1170.12). At sentencing, the trial court addressed and denied Stephens's motion for new trial brought on grounds he had received ineffective assistance of counsel. It sentenced Stephens to six years in prison in case No. SCS307577 concurrent to five years in case No. SCS278168.

Stephens contends the court abused its discretion by (1) denying his motion for new trial which the court treated as a motion to replace his counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); and (2) rejecting his request for a continuance of his sentencing hearing so he could retain private counsel. The latter contention has merit. Accordingly, we vacate Stephens's sentence and remand the matter for the trial court to give Stephens a reasonable continuance for the purpose of retaining private counsel for his sentencing hearing, including to bring a motion for new trial on grounds other than the ineffective assistance of his trial counsel. If

---

[1]     Undesignated statutory references are to the Penal Code.

2

Stephens fails to retain counsel within a reasonable time, the court shall reinstate the sentence, with the exception of any unpaid portion of the criminal justice administration fee, which the court shall vacate.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2019, a Chula Vista police detective arrested Stephens outside Stephen's vehicle, which was in the parking lot of a liquor store. In searching the vehicle, the officer found a backpack containing a metal handgun loaded with six .45-caliber bullets. The officer impounded the gun into evidence.

The officer also found several legal documents in a folder in the backpack's main compartment, separate from the gun and ammunition. Some documents had Stephens's name; others appeared to be police reports belonging to his son, who has the same name. The court took judicial notice that Stephens's son was in custody from September 2018 through April 1, 2019. In the same compartment holding the documents the officer found what appeared to be several credit cards with Stephens's name embossed on them.

A criminalist was unable to develop a DNA profile from swabs taken from the gun because the samples lacked enough DNA. It was still possible that Stephens or another person could have touched the gun and not left behind enough DNA to analyze.

T.B. was the gun's registered owner.[2] T.B.'s handgun went missing in 2014. T.B. never gave anyone permission to use the gun and did not know anyone named Raymond Stephens. The parties stipulated that Stephens had a prior felony conviction prohibiting him from owning a firearm or ammunition.

---

[2]     T.B.'s preliminary hearing testimony was read to the jury.

During opening statements, Stephens's counsel told the jury that counsel had stipulated that the firearm found in Stephens's car was not registered to him, but they would hear "where that firearm was located and whether or not Mr. Stephens had knowledge that that firearm was in his car, was in that backpack." He stated: "The evidence will show there is no DNA. Nobody's DNA is on that. The backpack has some of Mr. Stephens's paperwork in it, but what the prosecution didn't tell you in that opening statement is that it has another person's paperwork in it. That is Mr. Stephens's son. That backpack is not exclusive to him. It has other people's paperwork in it. That backpack was located in the back of Mr. Stephens's car behind him. [¶] What you are going to hear in this case is that Mr. Stephens, like so many other people, has other ways of supplementing his income. He doesn't do Uber, doesn't do Lyft, he loans his car out to friends for a little bit of cash every now and then. [¶] You are going to hear evidence from two witnesses that are going to talk to you about how they know Mr. Stephens and how they know that he loans his car out and then he gets money from people in order to do that. [¶] And that's important because what that's going to tell you is that other people had access to his car, other people had access to that area, and just like Mr. Stephens, they could have touched that firearm and not left DNA behind. [¶] And what you are going to hear about that backpack that the prosecution didn't talk to you about is that all of that paperwork that was so important to Mr. Stephens, he said all of that information was located in a compartment in the backpack which was a large compartment and there was a front compartment of that backpack that had nothing on Mr. Stephens. [¶] At the end of this case, the prosecution has to be able to prove to you beyond a reasonable doubt that Mr. Stephens is a felon. Done. They have done that, stipulated to. But they also

4

have to prove to you beyond a reasonable doubt that that firearm was there with Mr. Stephens's knowledge. Because even if he picked up that backpack and carried it and he didn't know the gun was there, that's not knowledge and that's not guilty. And that is what I am going to ask you to find at the end of this case."

Stephens's counsel did not present the witnesses at trial. During closing arguments, the prosecutor stated in part: "Let's talk about who else that backpack could have belonged to. Is it reasonable to think that someone would have stuffed this gun, this two and a half pound gun inside a backpack that was very clearly the defendant's? With the defendant's credit cards, with the defendant's very personal, very important court documents in that back pack? Unless someone was trying to frame the defendant, which we heard no evidence of, or if the defendant was the unluckiest man in the world, then sure, maybe. But how reasonable is that? [¶] Let's talk about the evidence. Let's talk about the reasonable conclusion that you can draw from the evidence and the evidence only. [Defense counsel] in his opening statement discussed that you were going to hear about how the defendant lent his car out to other people. Other people had this car. Maybe those people put this gun, framed the defendant, put this gun in the bag. You heard no evidence of that. You can only consider what's in the box, evidence. What I am saying right now, what [defense counsel] said to you in his opening statement, what he said to you this afternoon, that is not evidence. That is just us trying to guide you with the evidence. All you know is that this is the defendant's car registered to him. His backpack was his and that this gun was in his backpack."

The jury reached its verdicts on December 9, 2019, after deliberating about 50 minutes. The matter was set for sentencing on January 8, 2020.

5

On December 23, 2020, Stephens submitted a motion for new trial, arguing his counsel's representation was deficient. The sentencing hearing was rescheduled for January 16, 2020.

On the day of Stephens's sentencing, the trial court held a confidential *Marsden* hearing on the matter, acknowledging Stephens was not a lawyer and telling Stephens it needed to understand the basis for his claim of ineffective representation; that it "need[ed] to know all the reasons . . . ."[3] The court explained that if he showed good cause it might appoint an attorney to investigate further.

Stephens told the court that a week before trial, after working up the case for months with one attorney, he was given new counsel. He stated he had turned down deals with the district attorney given what he felt was the strength of his case. Stephens stated he was prepared to present a key witness, J.J., "the person who, actually, the weapon belonged to," who would testify against the advice of J.J.'s own counsel that he had left the handgun in Stephens's car. But according to Stephens, his new attorney decided in the midst of trial not to present any defense witnesses including J.J., even though J.J. was "willing and able and ready to go" and was "the meat of [Stephens's] defense." Stephens stated that his new lawyer visited him over the weekend and implied that Stephens's son may have had the weapon; when Stephens told him his son was incarcerated, the lawyer asserted that

---

[3]     The court told Stephens: "The Court has to determine whether you are entitled to new counsel to investigate your claim of ineffective assistance of counsel. So I need to understand why you think you were not represented effectively by [defense counsel]. If you don't—if you don't tell me why you think that is, then I'm denying your request for new counsel." Stephens responded: "I can tell you this—I can tell you some of the reasons." The court replied: "I need to know all of the reasons, basically." Stephens said he had asked for assistance because his attorney had not prepared him for the hearing, so he could only relate some of the reasons to the court.

the People were unaware of that. Stephens told the court his lawyer must have "tipped off" the prosecutor because the following Monday, the prosecutor represented the People were going to present evidence of Stephens's son's incarceration. Stephens stated that his lawyer told three or four important defense witnesses, including Stephens's business partner in their venture of renting vehicles, not to come to trial. Stephens stated these witnesses would testify they used or rented his car and that he rented out vehicles with his business partner.

Stephens claimed his counsel was ineffective by not putting on a defense; by not interviewing and calling his witnesses. He also stated his lawyer read the witness statements taken by his prior lawyer but did not believe them, telling Stephens: "The weapon was found in your bag, in your truck, so you're going to go to prison . . . plus do the five years of probation." Further, Stephens told the court that on the last day of trial the prosecutor informed everyone that Stephens's lawyer was on Stephens's son's case. Stephens said his lawyer did not tell him and it constituted a conflict of interest. Stephens complained that his lawyer incorrectly told him he was going to get five years of probation regardless of the outcome of trial. Stephens stated his lawyer called him delusional and refused to listen to Stephens's story about what happened.

Stephens's counsel advised the court that he had been ready to call all three of the witnesses when trial began, but his view changed when the prosecution did not present evidence that Stephens had told police after his arrest that the previous day he had had a gun in his possession. Defense counsel elected not to present witnesses to avoid giving the prosecutor an opportunity to present rebuttal evidence. According to counsel, though two witnesses would establish Stephens lent his car out at various times, he did

7

not think they added to the case given evidence that police found Stephens driving his own vehicle with the gun in a backpack connected to him: "There was some exculpatory value to it but not a great deal, in my opinion." Recounting witness J.J.'s statement to an investigator that he put the gun in Stephens's vehicle a month before Stephens's arrest, counsel stated that his investigator felt J.J. lacked credibility, and counsel felt preventing J.J.'s testimony was a better tactical choice in view of the prosecution's case. Counsel had all three witnesses either present or on call during trial, because if Stephens had chosen to testify against his advice, he would likely have called them as he could not have prevented the People's rebuttal. Counsel said he discussed the matter with Stephens and while Stephens disagreed, Stephens understood counsel had control and that was his trial tactic.

Stephens replied that counsel sent the witnesses home and did not ask him if he wanted to testify before he rested. Counsel told the court that Stephens was incorrect.

The court found defense counsel did not provide ineffective assistance, ruling there was not good cause to appoint another attorney to investigate Stephens's claim. It explained it did not find Stephens's case to be strong

even with J.J.'s statement, which it had reviewed and found not credible.[4] The court indicated it likely would not have allowed J.J. to testify or counsel to admit his statement. It also pointed out that had Stephens testified, the prosecution would have put on a rebuttal case and brought up "a lot of other evidence" to impeach him and the other witnesses. The court denied Stephens's motion for a new trial.

Stephens then asked, "Can I hire a lawyer on my own to do this?" The court responded: "[Y]ou would've needed to have hired them for today and they would've needed to be ready to go today." Stephens stated: "That was— I did hire someone for—to come for the morning, but my transportation was wrong and I wasn't here. My family was supposed to be here this morning to

---

[4] The court stated: "[I]t just was an incredible story that [J.J.] shows up in La Mesa to visit his niece. [¶] Apparently, he has this gun on him the whole time and he's drinking all day and he exercised extremely poor judgment all day, is there until 10:00, 11:00 at night and now he doesn't want to get on a trolley to go back home, so he asks someone for a ride. Nobody knows who this someone was, but apparently, someone unrelated to him— maybe a neighbor or a friend of the person he went to visit—gives him a ride. [¶] . . . [¶] They stop at a store and, all of a sudden, he gets a good judgment and he decides, [']You know what, I am not going to take this gun in to that store.['] Let me put this—the most logical place, if I believe that story, was under the seat. End of story. No. He says, [']Oh, there's a backpack down here. Hmm. Let me open the backpack, and let me zip this in there.['] Why would you do that? All of it is incredible to me. Okay? [¶] Anyway, he gets home, and he realizes, [']Oh, I left the gun in the backpack. He goes back to the La Mesa area but does not make contact with—I guess it was the mother of his niece, doesn't talk to her, doesn't talk to the neighbors or the other individuals who presumably gave him the ride. Tells no one that he—you know, either he left the gun or at least does not inquire about who the vehicle belongs to. We don't know if that vehicle is the same vehicle that you owned. No idea. Based on [J.J.'s] statements. [¶] . . . [¶] . . . I don't see the connection. [¶] . . . [¶] . . . Based on everything I know, it's just an incredible story. I do not find it credible. I was likely not going to allow that testimony or that evidence." The court stated that Stephens's counsel "made some tactical decisions that he has a right to make as your lawyer."

9

talk to the courts about that, but my transportation—because I was supposed to be in the morning court, the transportation didn't have a way for me and brought me in the afternoon. So that's what happened. That's what I'm trying to say, that we were already talking to some lawyers. Kerry Armstrong and Danny Shapiro and also Pat Ford; those were the people that—" The court replied, "They are not here now, and I am not going to continue this. I'm denying your motions. On appeal, you can raise the issue of ineffective assistance of counsel."

Stephens asked that his sentencing be postponed so he could bring in counsel, claiming that when he was supposed to be interviewed by the lawyers, he was at the hospital for surgery and hospital staff would not let him use the phone. He claimed he re-contacted the lawyers when he returned because he "didn't know what was going on." Stephens continued: "It was not my intent to come here without representation at all. It was not my intent to come here and have a hearing and do all of these things right here. [¶] I had no idea that this was going to happen today. I knew that I was going to ask for—ask for a postponement of sentencing, so I can go bring my lawyer in and let my lawyer deal with—do this because, like I told you, I was not prepared. And I said that before we started this, like I said, I mean, he's a lawyer; he's been doing this. There's no way that I can sit here and argue this case and do this on my own."

The court reiterated its ruling: "I just told you that I don't see that there was ineffective assistance of counsel, that the decisions that [Stephens's counsel] made, which you may not agree with, are still within his purview. It is his—he can make his tactical decisions because he is trained as a lawyer; he has experience as a lawyer. He can make those decisions to pursue the tactic that he believes is going to work best for you. In the end, nothing is

10

guaranteed. [¶] . . . [¶] Whatever tactic [counsel] uses, it might have won; it might not have. But he can't—it is still within the realm of reasonableness. His decision was reasonable."

At the conclusion of the hearing, Stephens told the court that his family was present to "talk to you to tell you about my hiring a lawyer." The court responded, "[W]e are done with that." The matter proceeded to sentencing, before which Stephens's counsel again asked the court to continue the sentencing hearing because Stephens's family was in process of attempting to hire an attorney: "He does have a family member who is present in court. They are in the process of attempting to hire an attorney—different attorneys on this case, and they have made efforts to do so, and they have given me some names of some attorneys that they are actually speaking with. So he is requesting to continue this sentencing at this time." The People opposed the request, telling the court Stephens had ample time to make the decision and hire new counsel. The court denied the request in the following colloquy:

"The court: . . . This matter was tried and guilty . . . verdicts entered on December 9, 2019. It was set for sentencing on January 8th[, 2020].

"[Stephens's counsel]: Your Honor, I had the flu that day, and Mr. Stephens was in the hospital.

"The court: So on January 8th, the Court was not here. I guess Mr. Stephens also was not available in any of that, and it was continued to today's date. [¶] Since there has been ample time to proceed with sentencing, I believe that the request for a new counsel, really, is to address the ineffective assistance of counsel claim and motion for new trial, and we've already addressed that." The court sentenced Stephens.

Stephens appeals from the judgment.

DISCUSSION

11

## I. Marsden *Request for New Counsel*

Stephens contends the trial court abused its discretion by denying his *Marsden* motion without inquiring about whether it was reasonable for his trial counsel to make empty promises to the jury that he would present defense witnesses. Stephens argues: "The record here demonstrates that the jury reasonably expected to hear witness testimony; the witnesses did not testify; counsel never explained away the omission; counsel gave reasons to the court for not calling the witnesses; and the court found defense counsel's explanation reasonable. However, the court did not examine the reasonableness for [*sic*] making the promise to the jury in the first place. It examined only the reasonableness in not calling the witnesses. As a result, the court's analysis of whether appellant was entitled to newly appointed counsel under *Marsden* was incomplete." Arguing that case law requires trial judges to consider all of his incompetence claims, Stephens characterizes the court's decision as absent informed discretion and based on an "incomplete analysis, based on incomplete information." Asserting the prosecutor took advantage of the absence of a promised defense in closing arguments, Stephens argues the court's failures were prejudicial and deprived him of his fundamental right to due process.

A trial court conducting a *Marsden* motion at any stage of criminal proceedings—preconviction or postconviction—"must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604; *People v. Sanchez* (2011) 53 Cal.4th 80, 88; accord, *People v. Wright* (2021) 12 Cal.5th 419, 440; *People v. Johnson* (2018) 6 Cal.5th 541, 572). " '[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to [the] holding in *Marsden,* to give the

defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney.  [Citations.]  A *Marsden* 'inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future.*' " (*In re M.P.* (2013) 217 Cal.App.4th 441, 456; see *Sanchez*, at p. 88.)  " 'But the decision must always be based on what has happened in the *past*.  The further one is in the process, the more counsel has done in the past that can be challenged, but that is a difference of degree, not kind.' " (*Sanchez*, at p. 88.)  We review a trial court's decision not to discharge appointed counsel for abuse of discretion.  (*Wright*, at p. 436; *People v. Cole* (2004) 33 Cal.5th 1158, 1190.)

We cannot agree with Stephens's characterization of the scope and sufficiency of the trial court's inquiry in this case.  The court told Stephens it needed to hear all of his reasons for wanting new counsel; it allowed him to explain why he believed his attorney was ineffective by failing to call witnesses who Stephens said were ready and willing to testify about their use of Stephens's car or placement of the gun in it.  The court then heard from Stephens's defense counsel, who explained why he made the decisions he did.  This is precisely what the Supreme Court has held trial courts should do: allow the defendant to describe his specific complaints about the attorney's representation and allow the attorney to respond.  (*People v. Wright*, *supra*, 12 Cal.5th at p. 441; *People v. Smith*, *supra*, 30 Cal.4th at pp. 604-605.)  In *Smith*, the California Supreme Court rejected the defendant's contention that he was denied the opportunity to develop an adequate record of his complaints and found the trial court did not abuse its discretion because "the [trial] court gave defendant full opportunity to air all of his complaints, and counsel to respond to them." (*Smith,* at p. 606.)

13

Stephens's trial attorney also gave reasons that permitted the court to understand why he had initially told the jury during opening statements that Stephens would present defense witnesses. As we have summarized above, counsel advised the court that while he had been prepared to present defense witnesses, he changed his mind after hearing the People's case and reassessing the strength of the witness testimony. This permitted the judge—who presided over the trial and heard defense counsel's opening statements—to consider "the reasonableness [of counsel] making a promise to the jury" when it made its assessment under *Marsden*.

Stephens complains about purported deficiencies in the court's inquiry: that the court did not address admissibility questions relating to his alleged statement about possessing a gun the day before his arrest, it never asked why defense counsel's witness assessment during the *Marsden* hearing conflicted with the contents of his opening statement, and it "did not ask counsel a single relevant question" about his counsel's efforts in reviewing files or discussing the case with his prior attorney and the investigators. He relies on *Marsden* and *People v. Brown* (2007) 147 Cal.App.4th 1213 to argue that a court's failure to fully inquire of the parties and "sufficiently analyze the route counsel actually decided to take" is an abuse of discretion. *Marsden* held a trial court abused its discretion by denying a motion for substitute counsel "solely on the basis of [its] courtroom observations" despite the defendant's offer to relate specific instances of misconduct. (*Marsden, supra*, 2 Cal.3d at p. 124; see *People v. Sanchez, supra*, 53 Cal.4th at p. 87.) *Brown* involved a trial court's exercise of sentencing discretion and its failure to understand it had discretion to award less than full victim restitution. (*Id.* at pp. 1228-1229.) The record here is different from *Marsden* and does not establish that the court misunderstood its discretion in assessing Stephens's

14

claims; the court gave Stephens a full opportunity to air his complaints and counsel to respond. In this event, "[n]o more was necessary." (*People v. Wright, supra*, 12 Cal.5th at p. 441.)

We hold it was enough that the court elicited information from which it could conclude Stephens's complaints about counsel were " 'tactical disagreements, which do not by themselves constitute an "irreconcilable conflict." ' " (*People v. Wright, supra*, 12 Cal.5th at p. 441; *People v. Frederickson* (2020) 8 Cal.5th 963, 1001 [whether to call certain witnesses is a matter of trial tactics].) Because the court reasonably could conclude Stephens and his counsel disagreed over trial tactics, it did not abuse its discretion in denying Stephens's motion. Having found no error, we need not reach the question of prejudice.

## II. *Denial of Request for Continuance*

Stephens contends the trial court erred by denying his request to continue his sentencing hearing for the purpose of retaining counsel who would investigate a new trial motion. He acknowledges this court reviews the lower court's decision for abuse of discretion, but he maintains the court here had no reasonable basis to deny his request for time to find a new attorney. He argues his request was made in good faith, meaning nothing in the record indicated he sought a continuance to delay his case arbitrarily. Stephens also argues he established good cause as he requested legal assistance within days of his conviction; he and his family tried to find counsel before the hearing but Stephens was in surgery, preventing him from contacting anyone; and he resumed his search after he was discharged. Stephens states the record is "silent on these details because the court refused [his] family an opportunity to share their recent efforts to hire a private attorney." Pointing out there had been no other continuances in the

15

four weeks following his conviction, and there was not a prolonged amount of time between then and his sentencing hearing, Stephens asserts his rights to due process, effective counsel, and to counsel of his own choosing outweighed any competing interest, such as expeditiousness, the court could have raised. Stephens argues the court "arbitrarily and unnecessarily denied [his] continuance request," comparing his case to *People v Crovedi* (1966) 65 Cal.2d 199 (*Crovedi*).

In general, the decision whether to grant a continuance is within the trial court's discretion. (*People v. Courts* (1985) 37 Cal.3d 784, 792; *People v. Byoune* (1966) 65 Cal.2d 345, 346.) The standard is the same when a defendant seeks a continuance to obtain private counsel. (See *People v. Shropshire* (2021) 70 Cal.App.5th 938, 949.) A court abuses its discretion only when it exceeds the bounds of reason, all circumstances being considered. (*Ibid.*) But there are special considerations where a defendant seeks a continuance to retain private counsel, as "trial courts have the responsibility to protect a financially able individual's right to appear and defend with counsel of his own choosing" and failure to respect these rights constitutes a denial of due process. (*People v. Courts*, at p. 790.) "In view of the importance of these rights and the severe consequences which flow from their violation, the trial courts are required to 'make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney.'" (*Ibid.*) Nevertheless, a continuance may be denied if the defendant is "'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.'" (*Id.* at pp. 790-791.)

As the People acknowledge, this court in *People v. Williams* (2021) 61 Cal.App.5th 627 recently discussed at length these principles concerning a

16

defendant's right to retain counsel of his own choosing, as well as the high court's decision in *Crovedi, supra,* 65 Cal.2d 199. We acknowledged *Crovedi* and ensuing cases "make clear that while a criminal defendant's right to counsel of choice is not absolute, that right may be overridden only under narrow, compelling, and specifically delineated circumstances. Further, a trial court must make *all* reasonable efforts to vindicate a defendant's constitutional right to counsel of choice and has 'limit[ed] . . . discretion' to intrude upon that right." (*Williams*, at p. 631.) The right " 'can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' " (*Id.* at p. 636, quoting *Crovedi, supra*, 65 Cal.2d at p. 208; see also *People v. Courts, supra*, 37 Cal.3d at p. 790.) " ' "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." [Citation.] For this reason, trial courts should accommodate [continuance] requests—when they are linked to an assertion of the right to retained counsel—"to the fullest extent consistent with effective judicial administration." ' " (*Williams*, at pp. 638-639.) These principles apply when the request is to continue a sentencing hearing, a "critical stage of the prosecution." (See *People v. Trapps* (1984) 158 Cal.App.3d 265, 270-271, 272.)

The trial court here did not abide by these "stringent limitations" (*People v. Williams, supra*, 61 Cal.App.5th at p. 640) on its discretion to intrude on Stephens's right to retained counsel of his choosing. By the time of his sentencing hearing (which was set not even a month after his convictions), Stephens was able to identify by name three potential private attorneys with whom he or his family assertedly had communicated. But the

17

trial court did not permit Stephens to make any showing as to how far along he had progressed in retaining private counsel, or his ability to do so.  It declined to hear details of Stephens's efforts to retain any of the three private counsel, either from Stephens or from his family members who were present at the sentencing hearing.  The court did not inquire about the length of Stephens's requested continuance.

Nor is this a matter where the record indicates Stephens " 'previously and successfully obtained numerous continuances without indicating that there existed any reason to change attorneys.' " (*People v. Courts*, *supra*, 37 Cal.3d at p. 792.)  Stephens cannot be faulted for his hospitalization, which his appointed counsel confirmed, and according to Stephens delayed his efforts to locate counsel.  Because Stephens sought to retain private counsel before his sentencing hearing, there were no witnesses to be impacted or inconvenienced by any delay.  There is no indication in the record that a continuance of Stephens's sentencing hearing would have resulted in calendaring issues (*People v. Williams*, *supra*, 61 Cal.App.5th at pp. 657) or unreasonable " 'disruption of the orderly processes of justice . . . .' " (*Courts*, at p. 790; *Williams*, at pp. 656-657.)  The record does not suggest Stephens's desire to replace his counsel was not "genuine," attributable to "gamesmanship," or that it was an effort to cause delay.  (Accord, *People v. Williams*, *supra*, 61 Cal.App.5th at pp. 650-651; compare *People v. Keshishian* (2008) 162 Cal.App.4th 425, 428-429, & fn. 10 [defendant on the day of trial surprised the court by telling it he had lost confidence in his counsel and sought a continuance to hire other lawyers; order denying continuance affirmed where defendant had not identified counsel, had obtained numerous continuances, and the crime had occurred six years before trial].)

We cannot distinguish *Williams*. There, the prosecution complained of the defendant's "last-minute substitution of counsel" and explained that it had spent over $3,500 to transport and house a material out-of-state witness and another witness, a retired police officer, had " 'extensive surgery and long-term travel plans' " after the scheduled trial. (*People v. Williams*, *supra*, 61 Cal.App.5th at p. 642.) This court nevertheless reversed the trial court's order denying the defendant's motion to substitute private counsel and for a four-month continuance, which the defendant made on the first day of trial. (*Id*. at pp. 641, 657.) Where the trial was not expected to be particularly long, no codefendants were involved, and neither the court nor the People identified any calendaring issues that would arise if the trial were rescheduled (*id*. at p. 657), those circumstances were not enough to override the defendant's constitutional right to counsel of his choosing: "[A] defendant's constitutional 'right to chosen counsel [citation] must be respected, even when a byproduct of a concrete and timely assertion of that right is some disruption in the process.' " (*Williams*, *supra*, 61 Cal.App.5th at p. 657.)

We conclude under these circumstances, the deprivation of Stephens's right to counsel of his choice is "per se harmful . . . ." (*People v. Williams*, *supra*, 61 Cal.App.5th at p. 657.) We vacate Stephens's sentence and remand the matter for the trial court to give Stephens a reasonable continuance for the purpose of retaining private counsel in advance of his sentencing hearing, including to bring a motion for new trial on grounds other than the ineffective assistance of his trial counsel. (Accord, *People v. Trapps*, *supra*, 158 Cal.App.3d at p. 273; *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1244 ["As a matter of practice, when a reviewing court identifies error relating solely to sentencing, it ordinarily does *not* reverse the judgment of conviction

19

or remand for a new trial. Rather, typically, it simply remands for resentencing"].) If Stephens fails to retain private counsel within a reasonable time, the court shall reinstate the sentence, subject to Government Code section 6111, explained below.

### III. *Criminal Justice Administration Fee*

During Stephens's sentencing, the court imposed a $154 criminal justice administration fee. Court authority to impose and collect this fee has been abrogated. (Gov. Code, § 6111;[5] see *People v. Greeley* (2021) 70 Cal.App.5th 609.) In the event the court reinstates Stephens's sentence, it shall vacate any unpaid balance of the criminal justice administration fee. (*Greeley*, at pp. 626-627.)

---

[5] Government Code section 6111 provides: "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to [Government Code s]ection 27712, subdivision (c) or (f) of [Government Code s]ection 29550, and [Government Code s]ections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."

## DISPOSITION

The sentence is vacated and the matter remanded with respect to Stephens's sentencing for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.